IN THE CIRCUIT COURT OF WINSTON COUNTY, MISSISSIPPI 

WILL McRANEY                                                                                    PLAINTIFF

VS.                                                              CAUSE NO. 2017-082 CVL

THE NORTH AMERICAN MISSION BOARD
OF THE SOUTHERN BAPTIST CONVENTION, INC.                                DEFENDANT

## COMPLAINT
### (JURY TRIAL DEMANDED)

COMES NOW, the Plaintiff, WILL McRANEY, by and through his undersigned attorney of record and files this his Complaint against the Defendant, THE NORTH AMERICAN MISSION BOARD OF THE SOUTHERN BAPTIST CONVENTION, INC., and in support thereof, the Plaintiff would show unto the Court the following matters and facts, to-wit:

### PARTIES

I.

The Plaintiff, WILL McRANEY, is an adult non-resident citizen of the State of Mississippi who resides at 9448 Lake Hickory Nut Drive, Winter Garden, Florida 34787.

II.

The Defendant, THE NORTH AMERICAN MISSION BOARD OF THE SOUTHERN BAPTIST CONVENTION, INC., is a foreign non-profit corporation, with a principal place of business located at 4200 North Point Pkwy, Alpharetta, Georgia 30022, and process may be had upon this Defendant by serving a Summons and copy of the Complaint upon their registered agent

1

**FILED**
APR 07 2017
KIM T. MING
CIRCUIT CLERK

National Registered Agents, Inc., 645 Lakeland East Drive, Suite 101, Flowood, MS 39232, in the form and manner provided by law.

## JURISDICTION AND VENUE

III.

Jurisdiction and venue are proper in the County Court of Winston County, Mississippi, since the cause of action arose or accrued in said jurisdiction, and a tort occurred in whole or in part within the jurisdiction of this Court in Winston County, Mississippi.

## FACTS

IV.

Plaintiff became employed as the Executive Director by the General Mission Board of the Baptist Convention for Maryland/Delaware (hereinafter referred to as "BCMD"). Plaintiff's duties included ministry direction and priorities of the organization and the screening and managing of all staff members fo BCMD.

V.

The BCMD, comprised of 560 separate, autonomous churches, is just one of 42 separate state conventions that work in cooperation with the Southern Baptist Convention (hereinafter referred to as SBC) located in Nashville, Tennessee, but primarily, the BCMD is a self governing body with its own boards, budgets and member churches.

VI.

The Defendant, North American Mission Board (hereinafter referred to as "NAMB") is one of 12 boards and agencies of the SBC, which operates pursuant to their own separate Board of Trustees elected for multiple year terms at the annual meeting of the SBC. The President of NAMB, as elected by the trustees, is Dr. Kevin Ezell, who has served in that role since September of 2010.

2

VIII.

Historically, BCMD and NAMB have partnered together under a written operating agreement known as a "Strategic Partnership Agreement" (hereinafter referred to as "SPA"), which outlined the respective oversight, management and obligation of each to the other and was in effect for an indefinite term.

IX.

As part of the SPA and a three-year budget agreement/commitment from NAMB to the BCMD for the years 2015-2017, the BCMD and NAMB had eight jointly funded staff positions to be hired in accordance with the SPA and supervised as employees of the BCMD by the Executive Director, Plaintiff McRaney.

X.

NAMB leadership designed a new SPA agreement in 2014, that NAMB began pushing on the 25-26 state conventions which were also operating under the 2012 SPA. This new SPA was designed by NAMB and contained numerous changes that gave NAMB more controls over the financial resources and the hiring, supervising and firing of staff positions of the state conventions, and eliminated all jointly-funded staff positions. Of the 25 state conventions with SPA with NAMB, some 18 of those were small SBC state conventions that were highly reliant on NAMB financial support. As such, they all submitted to the combination of requests and financial strong-arming tactics of NAMB to accept the new NAMB-friendly SPA. However, the BCMD was a mid-size state convention where the churches collectively supported NAMB with as many financial resources as NAMB returned to the BCMD. The approximate $1 million annual money was used to jointly hire staff and conduct ministry and mission efforts. This had been true for a 10-year period.

XI.

3

Beginning in the summer of 2014, NAMB began pressing Plaintiff McRaney on behalf of BCMD to accept the new SPA version rather than continue to operate under the 2012 version. In spite of Plaintiff's repeated requests to meet with Dr. Ezell on behalf of NAMB, certain NAMB employees, including Ezell, who at all times was acting as an agent for and on behalf of NAMB, wrote to various leaders within the BCMD that Plaintiff McRaney had repeatedly refused to meet with him. This patently false and libelous accusation was a deliberate attempt by Ezell to disparage Plaintiff McRaney and interfere with his relationships with his contractual employer BMCD.

X.

Throughout the fall of 2014, Plaintiff McRaney consistently declined to accept the newly written SPA, viewing the proposed SPA as a weakening of the autonomy of BCMD and the relinquishment of all controls to NAMB in the specific area of starting new churches, including the selection, assessing and training and supporting of church planters.

XI.

As a direct result of Plaintiff's McRaney's refusal to accept the new SPA became the unstated reason that directly led Director Ezell and NAMB Vice President Jeff Christopherson to give a one-year notice of cancellation between NAMB and BCMD, setting forth in the letter of cancellation, false and libelous accusations against Plaintiff McRaney.

XII.

After a series of meetings between Ezell and General Maryland Board Director Dooley and President Warren of the BCMD, in which Ezell used the financial incentive he could offer to BCMD to retain the jointly funded positions, Plaintiff McRaney was terminated from his employment on or about June 8, 2015. Plaintiff McRaney entered into a severance agreement with some continuing benefits as a result.

4

XIII.

After Plaintiff McRaney's termination in June of 2015, it was discovered that Ezell would withhold all NAMB monies to BCMD unless Plaintiff McRaney was terminated, but that those and additional funds would be forthcoming in the event of his termination and upon implementation of the new SPA by BCMD.

XIV.

Notwithstanding Plaintiffs's termination from employment, NAMB through its agents, officers and directors has continued a course of conduct designed to interfere with the business and contractual relationships of Plaintiff McRaney and various third parties. These actions including but not limited to, an intentional interference by NAMB leaders wherein Plaintiff McRaney was scheduled to speak at a large mission emphasis in Louisville, Winston County, Mississippi on October 23, 2016, but was uninvited as a direct result of intentional interference by Defendant NAMB employees and/or representatives. This had a direct economic benefit against Plaintiff McRaney, who used these promotional opportunities to endorse and sell his books on mission strategy.

XV.

Additionally, the Florida Baptist Convention Pastor's Conference President approached Dr. McRaney on November 1, 2016, to inform him that Dr. Ezell had called to interfere with Dr. McRaney being scheduled to speak at the November 14, 2016, Pastor's Conference. He kept Dr. McRaney on the program, but expressed such anger about Dr. Ezell's seeking to involve himself, that he was considering taking the matter into public view. According to the Conference President, Dr. Ezell called an influential Florida pastor who, at Dr. Ezell's urging, then called the Pastor's Conference President to interfere with Dr. McRaney's speaking at the event.

5

XVI.

On November 15, 2015, a national SBC agency board member shared a photo he took of Dr. McRaney's photo posted at NAMB headquarters in Alpharetta Georgia. The photo was posted in public view at NAMB's Welcome Desk by NAMB leadership. The posted photo of Dr. McRaney communicates that he was not to be trusted and public enemy #1 of NAMB. This 8x10 photo is evidence of the additional efforts to damage Dr. McRaney, who is innocent in these matters and is actually the victim of Dr. Ezell's intentional, repeated, and widely damaging actions This photo has caused additional damage and is a result of Dr. Ezell's defamation and continued interference with Dr. McRaney's work relationships.

## COUNT I

Plaintiff alleges and reaffirms paragraphs I through XVI.

XVII.

The Defendant NAMB is charged with intentional interference with business relationships existing between Plaintiff McRaney and BCMD by interfering with the contractual relationship existing between the two.

## COUNT II

The Defendant NAMB committed slander and/or libel by intentionally defaming Plaintiff so as to damage his reputation and character resulting in his ultimate termination.

## COUNT III

The Defendant NAMB is charged with intentional interference with business relationships by tortiously interfering with Plaintiff's existing relationship with a speaking engagement in Louisville, Mississippi, so as to prevent Plaintiff from speaking at the Mission Symposium.

## COUNT IV

The Defendant NAMB is charged with intentional interference with business relationships by tortiously interfering with Plaintiff's ability to speak at the Pastor's Conference in Florida.

## COUNT V

The Defendant NAMB is charged with intentional infliction of emotional distress by tortiously displaying an 8x10 photograph of Plaintiff in the reception area of the Defendant's home office in Alpharetta, Georgia, purposely designed to damage the reputation and character of the Plaintiff.

## COUNT VI

The Defendant NAMB is charged with intentional infliction of emotional distress, slander, libel, intentional interference with business relationships resulting in actual economic damages and damages for emotional distress which justifies the imposition of punitive damages against the Defendant. Plaintiff would show that the actions of the Defendant are so outrageous, as pleaded, that he should recover punitive damages, including but not limited to, his attorney's fees.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff demands Judgment against the Defendant NAMB in an amount to be determined at trial and for post-judgment interest, attorney's fees, costs and such other and further relief as may be deemed appropriate.

This ___4th___ day of April, 2017.

Respectfully submitted,

WILL McRANEY, Plaintiff

BY: _____
W. HARVEY BARTON, MSB# 2104

7


**BARTON LAW FIRM, PLLC**

W. HARVEY BARTON, MSB #2104
3007 Magnolia Street
Pascagoula, MS 39567
Telephone: (228) 769-2070
Facsimile: (228) 769-1992
Attorney for Plaintiff