UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

WILL McRANEY                                                                                            PLAINTIFF

V.                                                               Civil Action No. 1:17-cv-080-GHD-DAS

THE NORTH AMERICAN MISSION BOARD
OF THE SOUTHERN BAPTIST CONVENTION, INC.                 DEFENDANT

<u>MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS</u>

Before the Court is the Defendant North American Mission Board of the Southern Baptist Convention's ("NAMB") motion to dismiss [Doc. No. 8] the Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The matter is now ripe for review. Upon due consideration, the Court finds that the motion should be granted in part and denied in part.

**Background**

The Plaintiff Will McRaney ("McRaney") is the former Executive Director of the non-party General Mission Board of the Baptist Convention for Maryland/Delaware ("BCMD"). Pl.'s Comp. [Doc. No. 2] at 2. The BCMD is a self-governing group of 560 separate, autonomous churches. *Id.* It is one of 42 separate state conventions that work in cooperation with the non-party Southern Baptist Convention ("SBC"). *Id.*

The Defendant NAMB is a constituent board of the SBC. *Id.* at 2. While McRaney was never employed by the NAMB, he was employed by the BCMD, which partnered together with the NAMB under a "Strategic Partnership Agreement." *Id.* at 3. Aside from the obligations of this agreement, the BCMD are NAMB are separate and autonomous from each other. The BCMD is self-governing with its own boards and member churches, and the NAMB operates pursuant to its own Board of Trustees selected at annual meetings of the SBC. *Id.*

1

Under their partnership agreement, the BCMD and NAMB had eight jointly funded staff positions that were overseen by McRaney. *Id.*. In 2014, the NAMB developed a revised partnership agreement that eliminated the jointly-funded staff positions and gave the NAMB greater control over other staff positions of the BCMD. *Id.* The NAMB was unsuccessful in persuading McRaney to accept the new partnership agreement on behalf of the BCMD. NAMB President Dr. Kevin Ezell and Vice President Jeff Christopherson thereafter gave notice to the BCMD that the NAMB intended to cancel the partnership agreement between the NAMB and the BCMD. *Id.* at 4.

In June 2015, following meetings between Dr. Ezell and other board members of the BCMD, McRaney was terminated from his position as Executive Director of the BCMD. *Id.* According to McRaney, this was because Ezell threated to withhold all NAMB funds from the BCMD unless the BCMD terminated McRaney and agreed to enter into the new partnership agreement. *Id.* at 5.

McRaney alleges that, after his termination from employment with the BCMD, NAMB leadership continued to interfere with business and contractual relationships that McRaney had with third parties. For instance, McRaney avers that, in October 2016, he was scheduled to speak at a mission symposium in Louisville, Mississippi, until NAMB employees allegedly spoke to organizers of the event and had him uninvited. *Id.* Additionally, in November 2016, McRaney alleges that he was scheduled to speak at the Florida Baptist Convention Pastor's Conference. In early November, the Pastor's Conference President informed McRaney that Dr. Ezell had attempted, unsuccessfully, to get McRaney's appearance canceled. *Id.* Finally, McRaney alleges that his photo was posted at the NAMB headquarters welcome desk with a caption that stated he was not to be trusted. *Id.*

McRaney then filed this action in the Circuit Court of Winston County, Mississippi,

alleging three claims of intentional interference with business relationships, one claim of defamation, and one claim of intentional infliction of emotional distress. The NAMB then removed the case to this Court based on federal diversity jurisdiction, and after filing its answer, filed the present motion seeking to dismiss McRaney's claims.

## Standard for Dismissal under Rule 12(b)(6)

Motions to dismiss pursuant to Rule 12(b)(6) "are viewed with disfavor and are rarely granted." *Kocurek v. Cuna Mut. Ins. Soc'y*, 459 F. App'x 371, 373 (5th Cir. 2012) (citing *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003)). When deciding a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations set forth in the complaint and any documents attached to the complaint. *Walker v. Webco Indus., Inc.*, 562 F. App'x 215, 216–17 (5th Cir. 2014) (per curiam) (citing *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004)).

"[A plaintiff's] complaint therefore 'must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." ' " *Phillips v. City of Dallas, Tex.*, 781 F.3d 772, 775–76 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *Webb v. Morella*, 522 F. App'x 238, 241 (5th Cir. 2013) (per curiam) (quoting *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010) (internal quotation marks omitted)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (quoting *Fernandez-Montes v.*

3

*Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (internal quotation marks omitted)). "Dismissal is appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that is plausible on its face' and has failed to 'raise a right to relief above the speculative level.'" *Emesowum v. Hous. Police Dep't*, 561 F. App'x 372, 372 (5th Cir. 2014) (per curiam) (quoting *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. 1955).

## Analysis

### 1. The Ministerial Exception and Ecclesiastical Abstention Doctrine

#### a. *The Ministerial Exception*

The NAMB first argues that the "ministerial exception" bars McRaney's claims. The "ministerial exception" is a First Amendment doctrine that precludes court interference into "the employment relationship between a religious institution and its 'ministers'." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 188 (2012) (emphasis added). The purpose behind this exception is to prevent the state, through the enforcement of employment laws and regulations, from "depriving the church of control over the selection of those who will personify its beliefs." *Id.*

"Ministerial" in this context "does not depend upon ordination but upon the function of the position" *Id.* at 203 (Thomas, J., concurring)(citing *Rayburn v. General Conference of Seventh-Day Adventists*, 772 F.2d 1164, 1168 (4th Cir. 1985)). The Supreme Court in *Hosanna-Tabor* declined to apply a "rigid formula" to determine which employees qualified as a minister. Instead, the Court looked a totality of the circumstances analysis to find that the plaintiff, a teacher at a religious school, was a minister to whom the exception would apply. The factors the court considered included "the formal title given [the teacher] by the Church, the substance reflected in that title, her own use of that title, and the important religious functions she performed for the Church" *Id.* at 192. The Fifth Circuit likewise applied this analysis in *Cannata v. Catholic Diocese*

*of Austin*, 700 F.3d 169 (5th Cir. 2012). There the Fifth Circuit found that the ministerial exception applied to a church music director. The Fifth Circuit considered the "integral role in the celebration of Mass" the plaintiff played by selecting music, teaching the choir, and playing piano during the service. *Id.* at 178.

Turning to the case *sub judice*, NAMB argues that because McRaney was the Executive Director of the BCMD, his duties included "ministry direction," and that because McRaney was thus the employee tasked with directing the ministry efforts of the BCMD, he qualifies as a "minister" to whom the exception applies. The Court agrees, and finds that McRaney is indeed the type of ministerial employee to whom the exception potentially applies.

That does not end the Court's analysis, however, because before the exception can be applied the Court must also determine whether McRaney's pending claims are the type to which this exception applies. The Court holds they are not, and thus his claims are not subject to dismissal under this exception. Specifically, every case the Court has reviewed in which the ministerial exception was applied involved a plaintiff who had been previously employed by the defendant religious organization *itself* (and not just employed by a related or affiliated organization). For instance, in *Hosanna-Tabor*, the dispute was one between a religious school and a former teacher at that school itself. 565 U.S. at 177-78. In *Cannata*, the dispute was between a church and its former music director. 700 F.3d at 170-71. In fact, every case cited by the NAMB in support of its motion involves a dispute between employer and employee. *See e.g., Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829, 831 (6th Cir. 2015)(dispute between college missionary organization and "spiritual director" for the organization"); *Rweyemamu v. Cote*, 520 F.3d 198, 199-200 (2d. Cir. 2009)(dispute between Catholic diocese and priest); and *Curl v. Beltsville Adventist School.*, 2016 WL 4382686, at *1 (D. Md., Aug. 15, 2016)(dispute between Seventh-

Day Adventists school and teacher). Further, even within the employer-employee relationship, this exception only prevents claims that arise out of actual employment decisions *themselves*, and not just related conduct. For example, the Ninth Circuit held that a pastor terminated for complaining of sexual harassment by her superiors could not sue her former church employer for retaliatory termination without running afoul of the exception, but could sue for the harassment itself. *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 966 (9th Cir. 2004).

Accordingly, in the case *sub judice*, because McRaney was indisputably not employed by NAMB, this is not a claim between employer and employee, is not a claim that arises out of employment decisions made by the sole Defendant NAMB, and thus the ministerial exception does not apply to mandate dismissal of any of McRaney's claims.

### b. *The Ecclesiastical Abstention Doctrine*

Next, the NAMB argues that the doctrine of "ecclesiastical abstention" prevents the Court from resolving McRaney's claims and mandates their dismissal. First, the Court notes that while the parties equate the ecclesiastical abstention doctrine with the ministerial exception, they are in fact separate, albeit related, principles. *See, e.g. Gregorio v. Hoover*, 238 F. Supp. 3d 37, 46 (D.D.C. 2017) (describing the ecclesiastical abstention doctrine as "separate but distinct from the ministerial exception.").

The ecclesiastical abstention doctrine is built out of numerous Supreme Court cases affirming that churches have the "power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952). Thus, civil courts are limited in deciding "religious controversies that incidentally affect civil rights." *E. Orthodox Diocese for U. S. of Am. & Canada v. Milivojevich*, 426 U.S. 696, 710 (1976). Courts may only decide "church disputes over church polity and church administration" when they can do so

"without resolving underlying controversies over religious doctrine." *Id.* (internal quotations omitted). Under this doctrine courts have:

> consistently agreed that civil courts should not review the internal policies, internal procedures, or internal decisions of the church, and this includes review of whether a church followed its own internal policies or procedures. *See, e.g., Kral v. Sisters of the Third Order Regular of St. Francis,* 746 F.2d 450 (8th Cir.1984) ("A claim of violation of the law of a hierarchical church, once rejected by the church's judicial authorities, is not subject to revision in the secular courts."); *Nunn v. Black,* 506 F. Supp. 444, 448 (W.D.Va.1981) (stating "the fact that local church may have departed arbitrarily from its established expulsion procedure in removing [dissident church members] was of no constitutional consequence"), *aff'd* 661 F.2d 925 (4th Cir.1981); *Simpson v. Wells Lamont Corp.,* 494 F.2d 490 (5th Cir.1974); *Burgess v. Rock Creek Baptist Church,* 734 F. Supp. 30 (D.D.C.1990).

*Ginyard v. Church of God in Christ Kentucky First Jurisdiction, Inc.*, 6 F. Supp. 3d 725, 729 (W.D. Ky. 2014).

As for the ecclesiastical abstention doctrine's potential application to McRaney's interference claims, the Court cannot rule at this juncture that resolving these claims will necessarily require the Court to decide "matters of religious doctrine." While this is a dispute between members of the same religious denomination, it is not one which, on the face of the complaint, involves a review of "*internal* policies, *internal* procedures, or *internal* decisions of the church." *Id.* (emphasis added). The claims of the complaint relate to the NAMB's *external* actions toward separate autonomous organizations, rather than internal decisions within the hierarchy of a single organization. Therefore, at this juncture the Court will decline to apply the ecclesiastical abstention doctrine to McRaney's claims for intentional interference with business relations, and those claims are not subject to dismissal based on this doctrine.

As for McRaney's claim for defamation and the ecclesiastical abstention doctrine, McRaney contends that the NAMB defamed him when its president, Dr. Ezell, told various leaders of the BCMD that McRaney refused to discuss the updated partnership agreement. Pl. Comp. at 4,

7

6. McRaney claims that he attempted to do so, and that it was NAMB leadership that refused to meet with him. *Id.* at 4. McRaney claims this disparaged him in the eyes of BCMD leadership and contributed to his termination. *Id.*

To prove defamation under Mississippi law, a plaintiff must show:

> (a) a false statement that has the capacity to injure the plaintiff's reputation; (b) an unprivileged publication, i.e., communication to a third party; (c) negligence or greater fault on part of publisher; and (d) either actionability of statement irrespective of special harm or existence of special harm caused by publication.

*Mayweather v. Isle of Capri Casino, Inc.*, 996 So.2d 136, 139 (Miss. Ct. App 2008)(citing *Speed v. Scott*, 787 SO.2d 626,631 (Miss. 2001)).

The NAMB argues that adjudicating McRaney's defamation claim would require the Court to decide matters of internal church governance and that the ecclesiastical abstention doctrine thus bars the claims. The NAMB cites two cases to support its proposition.

The first is *Klagsbrun v. Va'ad Harabonim of Greater Monsey*, 53 F.Supp.2d 732, (D.N.J.1999). In that case, the plaintiff, a member of an Orthodox Jewish congregation, sued a group of Rabbis for publishing a false statement about the plaintiff's marriage and divorce. *Id.* at 734-735. The plaintiff alleged that the notice charged the plaintiff with "bigamy," "failing to comply with an order of a rabbinical court," and "failing to submit to the jurisdiction of a rabbinical court." *Id.* at 740-41. The *Klagsbrun* court found that to resolve the case, it would need to determine not just factual issues, such as whether the plaintiff had failed to comply with a rabbinical court order, but also whether that failure was a sin "within the Orthodox Jewish faith which lead to the imposition of the punishment of shunning." *Id.* at 741. The court could not engage in purely secular analysis, such as determining was factually engaged in bigamy, but whether he was engaged in bigamy "within the meaning of the Orthodox Jewish faith." *Id.* These questions,

8

the court held, could only be decided by an inquiry into religious doctrine, an impermissible inquiry under the First Amendment. Thus, the plaintiff's claims were dismissed.

In the second case, *Horne v. Andrews*, 589 S.E. 2d 719 (Ga. Ct. App. 2003), the plaintiff, a church pastor, sued another church official for defamation. The church official had prepared a document which he gave to another church official accusing the pastor of "refus[ing] to follow the United Methodist Discipline; failing to visit members who were ill or otherwise unable to attend church; failing to participate in the church's stewardship campaign; failing to meet or communicate with other church leaders; failing to raise funds for the church; and inappropriate behavior." *Id.* at 720. According to the Georgia Court of Appeals, determining whether these statements were libelous would require the court to "inquire into church policy regarding such matters as a pastor's role in participating in stewardship programs, the proper use of church funds, and the proper time for a pastor to arrive at church." The court could not do so, and therefore ruled that dismissal of the claims was appropriate. *Id.*

In the case *sub judice*, to determine whether the subject statements were defamatory this Court must determine, among other things: (1) whether McRaney refused to meet with NAMB officials to discuss the new partnership agreement; and, if not, (2) whether McRaney was harmed by the false statements. While the first inquiry is clearly a pure factual matter, the NAMB contends that resolving the second inquiry would entangle the Court in matters of the BCMD's and NAMB's internal governance and thus the claim should be dismissed.

The Court disagrees. First, unlike the court in *Klagsbrun*, this Court would not need to decide matters of pure religious doctrine such as what constitutes a valid religious divorce or a rabbinical court order. Second, while this case is much more similar to *Horne*, the nature of the alleged harm would not require this Court to decide any parameters or issues of proper church

governance. In *Horne*, the plaintiff pastor alleged that the defamatory statements subjected him to "humiliation, ridicule, contempt, and emotional distress and caused his ministry as pastor to suffer suspicion." 589 S.3d 2d at 721. Because he did not allege any "special harm," but rather only general damages, those statements would only be actionable if they constituted defamation *per se*. Thus to determine whether the statements were defamatory, the *Horne* court was required to determine whether the statements about the pastor were "injurious on their face." *See Bellemead, LLC v. Stoker*, 631 .S.E.2d 693, 695 (Ga. 2006) (defining "slander per se" under Georgia law). And to do that, the court would necessarily be required to determine what constituted "appropriate behavior" for a pastor – a clear inquiry into religious practice.

In the case *sub judice*, however, McRaney *has* pled specific harm – that the alleged defamatory statements contributed to his termination. *See Speed*, 787 So.3d at 632 ("Special harm is the loss of something having economic or pecuniary value.")(internal quotations omitted). Accordingly, to determine whether McRaney's claim has merit, the Court need only decide whether the statements about McRaney were false and whether they caused his termination, neither of which will require the Court to delve into any religious practices or matters of internal church governance. Thus, on the face of the complaint, the Court can adjudicate this claim without delving into impermissible religious inquiries, the ecclesiastical exception therefore does not apply, and NAMB's motion to dismiss this claim on this basis is denied.

## 2. Whether McRaney Has Adequately Pled His Claims under Rule 12(b)(6)

As noted above, under Rule 12(b)(6) a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). NAMB asserts that McRaney has not

met this standard with respect to his claims for intentional interference with contractual relationships or his claim for intentional infliction of emotional distress, and thus those claims should face dismissal.

### a. *McRaney's Claims of Intentional Interference with Contractual Relationships*

In his Complaint, McRaney asserts that there are three separate incidents where the NAMB intentionally interfered with business relationships he held with other parties. First, he alleges that the NAMB intentionally interfered with his contractual employment relationship with the BCMD by threatening to withhold funds from the BCMD unless they fired McRaney. Pl. Comp. at 6. Second and third, he alleges that the NAMB tortiously sought to have him removed from two unaffiliated speaking engagements in Mississippi and Florida. *Id.* at 6-7.

Under Mississippi law, the elements of intentional interference with a contractual relationship are: "(1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiff in his/her lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which acts constitute malice); (4) that actual damage or loss resulted," and "(5) the defendant's acts were the proximate cause of the loss or damage suffered by the plaintiff." *Scruggs, Millette, Bozeman & Dent, P.A. v. Merkel & Cocke, P.A.*, 910 So.2d 1093, 1098–99 (Miss.2005). To succeed a plaintiff "must prove that the contract would have been performed but for the alleged interference." *Id.* (internal citations omitted).

Because an essential element is that the plaintiff suffer some damage or loss, the Court holds that McRaney's claim that the NAMB intentionally interfered with his scheduled appearance

at the Florida Pastor's Conference fails.[1] Despite the NAMB's actions, McRaney admits that his speech in Florida was not canceled and he therefore did not suffer damages. McRaney therefore cannot state a claim for interference with that relationship and that claim shall be dismissed.

In regard to McRaney's other two claims for intentional inference, the Court finds that he has met his initial pleading burden and that dismissal of those claims at this juncture is thus inappropriate.[2] First, with regard to his relationship to the BCMD, McRaney has alleged that the NAMB intentionally acted to have the BCMD fire him, and that he was actually fired as a result of NAMB's actions. These allegations are sufficient at this juncture to state a claim for intentional interference under these alleged facts. Second, he has sufficiently alleged that the NAMB intentionally sought to have his speech in Louisville, Mississippi, cancelled and that it was actually cancelled as a result, thus causing him damage. These allegations are likewise sufficient to state a claim for intentional interference at this juncture. Accordingly, the Court shall deny the NAMB's motion to dismiss these two interference claims.

### b. *McRaney's Claim for Intentional Infliction of Emotional Distress*

Finally, McRaney alleges that the NAMB intentionally inflicted him with emotional

---

[1] Though not discussed by the parties, it is not clear to the Court whether Florida or Mississippi law should apply to McRaney's Florida-based claim. In any event, because it is also a requirement under Florida law that the plaintiff suffer damages, dismissal of this claim is warranted under both Mississippi and Florida law. *Farah v. Canada*, 740 So. 2d 560, 561 (Fla. Dist. Ct. App. 1999)("The elements of the tort of intentional interference [with a contract] [under Florida law] are: 1) the contract; 2) the wrongdoer's knowledge thereof; 3) his intentional procurement of its breach; 4) the absence of justification; and 5) damages.")(internal quotation omitted).

[2] The laws of Mississippi, Delaware, and Maryland are similar such that McRaney has met his pleading burden under all three, regardless of which ultimately applies to each claim. *See, e.g., Malpiede v. Townson*, 780 A.2d 1075, 1099 (Del. 2001)(Elements of tortious interference with a business relationship are "(a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c) proximate causation, and (d) damages . . . . [applied] in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner."); *Blondell v. Littlepage*, 991 A.2d 80, 97 (Md. 2010)( "A claim for intentional interference with contractual or business relations requires the following elements:(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting.")

distress by placing a photograph of him in the NAMB's headquarters with a caption that said "he was not to be trusted and [is] public enemy #1 of NAMB." Pl. Comp. at 7.

To prevail on a claim for intentional infliction of emotional distress under Mississippi law, the plaintiff must show:

> (1) the defendant acted willfully or wantonly toward the plaintiff by committing certain described actions; (2) the defendant's acts are ones that evoke outrage or revulsion in civilized society; (3) the acts were directed at, or intended to cause harm to, the plaintiff; (4) the plaintiff suffered severe emotional distress as a direct result of the acts of the defendant; and (5) such resulting emotional distress was foreseeable from the intentional acts of the defendant.

*Rainer v. Wal–Mart Assocs. Inc.*, 119 So.3d 398, 403–04 (Miss. Ct. App. 2013) (citing *J.R. ex rel. R.R. v. Malley*, 62 So.3d 902, 906–07 (Miss. 2011)).

In order to state such a claim, the defendant's alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bowden v. Young*, 120 So. 3d 971, 980 (Miss. 2013)(citing *Pegues v. Emerson Elec. Co.*, 913 F. Supp. 976, 982 (N.D. Miss. 1996)). This liability will not extend to "insults, indignities, threats, annoyances, petty oppression, or other trivialities." *Pegues*, 913 F.Supp at 982.

The Court finds that McRaney has facially met his pleading burden at this stage. He has alleged that NAMB employees acted intentionally when they placed the photograph of him at NAMB headquarters, that the NAMB did so to cause him emotional distress by impugning his reputation and character, and that he suffered emotional distress as a result. Given the circumstances of the photograph and the location where it was allegedly posted, the Court find that McRaney has, at a minimum, facially stated a plausible claim for relief for intentional infliction of emotional distress related to this incident, and this claim shall therefore proceed.

## Conclusion

For the reasons stated above, the Court holds that McRaney has failed to adequately plead Count IV of his complaint, for intentional interference with business relations, in relation to a speaking engagement in Florida. That claim shall be dismissed pursuant to Rule 12(b)(6).

As for McRaney's remaining claims, the ministerial exception "precludes application of [employment] legislation to claims concerning the employment relationship between a religious institution and its ministers. *Hosanna-Tabor*, 575 U.S. at 188. Because the relationship between McRaney and the NAMB was not one of employee-employer, that exception is inapplicable to McRaney's remaining claims and does not subject the claims to dismissal. Further, McRaney's claims, as stated on the face of the Complaint, will not require the Court to impermissibly inquire into religious doctrine and practice, although the factual development of this case may later prove otherwise. Thus, the Court will not apply the ecclesiastical abstention doctrine to dismiss McRaney's remaining claims at this time. Finally, the Court finds that McRaney has adequately pled two claims for intentional interference with contractual relations, as set forth above, and has adequately pled a claim for intentional infliction of emotional distress. Those claims are not subject to dismissal under Rule 12(b(6), and the Defendant's motion to dismiss those claims shall be denied.

An order in accordance with this opinion shall issue this day.

THIS, the 18th day of January, 2018.

/s/ Glen H. Davidson
SENIOR U.S. DISTRICT JUDGE