# EXHIBIT F

```
 1            IN THE UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF MISSISSIPPI
 3                      ABERDEEN DIVISION
 4   WILL MCRANEY                )
 5      Plaintiff                )
 6          Vs.                  )
 7   THE NORTH AMERICAN          ) Civil Action No.:
 8   MISSION BOARD OF THE        ) 1:17-cv-80GHD-DAS
 9   SOUTHERN BAPTIST            )
10   CONVENTION, INC.            )
11      Defendant                )
12                    ---------------------
13
14          Deposition of WILLIAM WARREN, Ph.D., was
15   taken via videotape on Thursday, May 4, 2023,
16   commencing at 10:39 a.m., at Regus - Annapolis 2,
17   1910 Town Centre Boulevard, Suite 250, Annapolis,
18   Maryland, before MICHELE D. LAMBIE, Notary Public.
19                    ---------------------
20   Reported By:  Michele D. Lambie, CSR-RPR
21
```

Page 1

```
 1  is --
 2     Q.  So, which paragraph are you looking at?
 3     A.  I'm looking at No. 5.
 4     Q.  Okay.  All right.  Are you able to
 5  understand paragraph 5 --
 6     A.  Oh, yeah.
 7     Q.  -- in light of your question?
 8     A.  Yes.
 9     Q.  Okay.
10     A.  But in order to agree or disagree, I need
11  to know what a supporting organization is.
12     Q.  Okay.  Well, without -- without knowing
13  what it is, are you able to agree or disagree with
14  paragraph 5?
15         MR. MARTENS:  Objection.
16         THE WITNESS:  Okay.  In my view --
17  because I don't know the legal definition of
18  supporting organization, in my view NAMB does
19  support the BCMD because they give us funds.
20  BY MR. GANT:
21     Q.  Does the BCMD support NAMB?
```
Page 270

```
 1     A.  It goes both ways.
 2     Q.  Okay.
 3     A.  Now, if the definition of a supporting
 4  organization means that they give us more money
 5  than we give them, then -- then they're not a
 6  supporting organization if that's what supporting
 7  organization means.  But if it means do they
 8  support us financially, yes, they do.
 9         So, I would quibble with No. 5 if my
10  understanding of supporting organization, the
11  definition, is correct.
12     Q.  Okay.
13     A.  I don't quibble with No. 4.  That is
14  true.
15     Q.  Okay.  So, we've covered 4.  We've
16  covered 5.
17     A.  Um-hum.
18     Q.  With respect to do you have any basis for
19  disputing paragraph 3 of Exhibit 27?
20     A.  I have no knowledge of whether he did or
21  he didn't do it.
```
Page 271

```
 1     Q.  Do you have any basis for disputing
 2  paragraph 6 of Exhibit 27?
 3         MR. GUNDERSON:  I'll object to the extent
 4  paragraph --
 5         MR. GANT:  That's fine.  I'm going to
 6  withdraw the question.
 7         MR. GUNDERSON:  Okay.
 8         MR. GANT:  So save -- save yourself.
 9  Thank you.
10  BY MR. GANT:
11     Q.  Let's focus on paragraph 7.  Mr. De
12  Armas, Dr. McRaney's attorney, wrote there, At no
13  time did Dr. McRaney intend that his settlement
14  with BCMD would release the NAMB for the harm
15  caused by the NAMB nor did the release executed by
16  Dr. McRaney serve to release NAMB, do you see that?
17     A.  I see that.
18     Q.  Do you have any factual basis for
19  disputing that sentence?
20     A.  I was not privy to the conversation.
21     Q.  Do you -- are you aware of any factual
```
Page 272

```
 1  basis for questioning the accuracy of that
 2  statement?
 3     A.  No, I'm not aware of any factual basis to
 4  question that.
 5     Q.  You can put that aside for now.
 6     A.  Okay.
 7         (Whereupon, Warren Deposition Exhibit No.
 8  28, Documents Bates Numbered BCMD_1838 through
 9  BCMD_1839, marked for identification.)
10  BY MR. GANT:
11     Q.  I've handed you what's been marked as
12  Exhibit 28, which is Bates labeled BCMD_1838.
13         Just a housekeeping question before we
14  get on to the exhibit itself.
15         Were you provided with a copy of any
16  Protective Order in this case prior to reviewing
17  documents produced by BCMD?
18     A.  Define Protective Order.
19     Q.  A Protective Order generally is an Order
20  that governs how certain material may be used in a
21  case and who can see it.
```
Page 273

69 (Pages 270 - 273)

```
 1      There's a specific Protective Order
 2  related to BCMD documents that was entered by the
 3  court in this case.  What I'm trying to find out is
 4  whether anyone gave you a copy of that prior
 5  to -- prior to or after your reviewing documents
 6  produced by BCMD?
 7      A.  I don't recall getting a Protective
 8  Order.
 9      Q.  Okay.
10      A.  But I didn't show them to anyone.
11      Q.  But you reviewed them?
12      A.  I reviewed them, yes.
13      Q.  All right.  Let's turn back to Exhibit
14  28.  I don't remember if I said the Bates numbers.
15  It's labeled BCMD_1838 through 39.
16      Please take a look at it and let me know
17  if you've seen this exhibit before.
18      (Whereupon, there was a pause for
19  document examination.)
20      THE WITNESS:  I don't recall receiving
21  the document, but obviously I did because I'm
```
Page 274

```
 1  listed.
 2  BY MR. GANT:
 3      Q.  You don't have any reason to doubt that
 4  you received this email --
 5      A.  No.
 6      Q.  -- on or around February 20, 2015?
 7      A.  No.
 8      Q.  Now, the -- the BCMD's legal counsel
 9  there is identified as Jeff Agnor, correct?
10      A.  Yes.
11      Q.  And I may be mispronouncing the last
12  name.
13      A.  No, that's right.
14      Q.  His firm is the same firm that is
15  representing you in connection with this
16  deposition, correct?
17      A.  Yes.
18      Q.  And you were familiar with them from your
19  time as president of BCMD?
20      A.  Yes.
21      Q.  And do you consider them reliable
```
Page 275

```
 1  counsel?
 2      A.  Yes, I do.
 3      Q.  Now, the first paragraph of this
 4  email -- strike that.
 5      This is an email from Dr. McRaney to
 6  yourself and several other people, --
 7      A.  Yes.
 8      Q.  -- copying Jeff Agnor, BCMD's counsel,
 9  correct?
10      A.  Yes.
11      Q.  And the first paragraph describes a
12  request that was made for an input from Jeff Agnor,
13  BCMD's counsel, correct?
14      A.  Correct.  Correct.
15      Q.  And then there's some bullet points where
16  Dr. McRaney has summarized statements from Jeff
17  that Jeff authorized to be communicated to you and
18  others, correct?
19      A.  Correct.
20      Q.  Okay.  And in the third bullet there,
21  Dr. McRaney transmitted from BCMD's counsel, Jeff
```
Page 276

```
 1  Agnor, that neither Dr. McRaney nor the BCMD had
 2  breached the Cooperative Agreement either
 3  technically or the spirit of the agreement,
 4  correct?
 5      MR. MARTENS:  Objection.  Hearsay.
 6      THE WITNESS:  That's what it says.
 7  BY MR. GANT:
 8      Q.  And there the reference to network you
 9  understand to refer to BCMD?
10      MR. MARTENS:  Objection.  Hearsay.
11      THE WITNESS:  Yes.
12  BY MR. GANT:
13      Q.  And the reference to
14  Cooperative -- Cooperative Agreement you understand
15  to be to the Strategic Partnership Agreement that
16  you looked at earlier today?
17      MR. MARTENS:  Objection.  Hearsay.
18      THE WITNESS:  Yes.
19  BY MR. GANT:
20      Q.  Then after the bullets, it says, I
21  believe that I have accurately reflected my
```
Page 277

70 (Pages 274 - 277)