# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF MISSISSIPPI

Will McRaney,

    Plaintiff,

v.

The North American Mission Board of the Southern Baptist Convention, Inc.,

    Defendant.

Case No. 1:17-cv-00080-GHD-DAS

# PLAINTIFF'S MEMORANDUM IN SUPPORT OF
# MOTION FOR SUMMARY JUDGMENT
# WITH RESPECT TO NAMB's "SEPARATION AGREEMENT DEFENSES"

**INTRODUCTION**

In its Answer (Doc. 198) to Plaintiff's Supplemental Pleading (Doc. 191), NAMB contends it was released by a Separation Agreement between Dr. McRaney and his former employer, the Baptist Convention of Maryland/Delaware ("BCMD"). NAMB claims it was a "supporting organization" of BCMD, covered by general release language in Section 5 of the Separation Agreement. NAMB asserts four "Defenses" (Defenses 4-7) based on this theory—the "Separation Agreement Defenses."[1]

Plaintiff is entitled to summary judgment with respect to NAMB's Separation Agreement Defenses for at least four independent reasons.[2]

First, NAMB is violating a mandatory forum selection clause in the Separation Agreement, which provides: "All suits, proceedings and other actions *relating to*, arising out of or *in connection with* this Agreement **shall** be brought **exclusively**" in state or federal court in Maryland. *See* Doc. 37-1 at 7 (emphasis added). Flouting Supreme Court and Fifth Circuit law, which apply a strong presumption in favor of the enforcement of mandatory forum selection clauses, NAMB presses its (meritless) defenses based on the Separation Agreement, yet fails to abide by the Agreement's forum selection provision. That is not permitted, and is an independent and threshold basis for the entry of summary judgment in favor of Plaintiff on the Separation Agreement Defenses.

---

[1] NAMB calls these "Defenses," but release is an affirmative defense under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(c)(1). NAMB asserted the same defenses in its Amended Answer (Doc. 47, Defenses 4-7). To the extent NAMB's Amended Answer has not been supplanted by NAMB's Answer to Plaintiff's Supplemental Pleading (Doc. 198), Plaintiff also moves for summary judgment with respect to those corresponding Defenses in NAMB's Amended Answer (Doc. 47).

[2] Courts can grant summary judgment to a plaintiff with respect to defenses. *See*, *e.g.*, *Bank of America National Association v. Stauffer*, 728 Fed. App'x 412 (5th Cir. 2018) (affirming summary judgment on defenses).

Second, the Separation Agreement provides it is to be "construed and governed in accordance with the laws of the State of Maryland." Doc. 37-1 at 7 (Section 15). Maryland law principles of contract interpretation dictate that the term "supporting organization" in the Agreement be construed in accord with the ordinary meaning of that term. And that ordinary meaning—well-established in the world of non-profit organizations, including many religious organizations—refers to the way "supporting organization" is used in the Internal Revenue Code. NAMB acknowledges it is not a supporting organization of BCMD under that definition. Instead, it advances a definition of "supporting organization" that is subjective, open-ended, and defies commonsense—in contravention of basic principles of Maryland law governing contract interpretation.

Third, while NAMB's Separation Agreement Defenses fail as a matter of Maryland law, discovery has confirmed that those defenses also lack factual merit, and summary judgment for Plaintiff is warranted on that basis as well.

Fourth, NAMB seeks to enforce provisions of the Separation Agreement as a non-party to the contract. But Maryland law is restrictive about when a party can enforce a contract as a third-party beneficiary. Here, discovery made clear that NAMB had no role in, or knowledge about, the Separation Agreement when it was negotiated and executed. NAMB did not even see a copy of the Agreement until after this lawsuit was filed, and there is no evidence that the parties intended for the Agreement to benefit NAMB. To the contrary, the undisputed evidence shows that Dr. McRaney intended to preserve his claims against NAMB when he signed the Separation Agreement. Under these facts, Maryland law does not permit NAMB to enforce the Separation Agreement.

## BACKGROUND

**Plaintiff's Lawsuit Against NAMB**

In April 2017, Dr. Will McRaney filed a lawsuit in Mississippi state court against the North American Mission Board of the Southern Baptist Convention, Inc. ("NAMB"), a non-profit corporation organized under the laws of Georgia. The lawsuit alleges NAMB violated state common law, causing McRaney economic and non-economic harm.

Dr. McRaney is not, and never has been, an employee of the Defendant, NAMB. The alleged conduct by NAMB occurred both during and after McRaney was employed by a separate, autonomous organization—the Baptist Convention of Maryland/Delaware ("BCMD"). BCMD is not a party to McRaney's lawsuit.

After removal to federal court, NAMB convinced this Court to dismiss Dr. McRaney's complaint for lack of subject matter jurisdiction. A multi-year appellate process then ensued, during which the Fifth Circuit reversed and reinstated Dr. McRaney's case, and the Supreme Court of the United States denied NAMB's request for review.

More than four years after this case began, the parties returned to this Court, to finally commence discovery and adjudicate the merits of Dr. McRaney's complaint against NAMB, which asserts claims for intentional interference with business relationships, defamation, and intentional infliction of emotional distress.

During discovery, the Court granted Plaintiff permission to file a Supplemental Pleading (Doc. 190), which Plaintiff did on December 7, 2022. *See* Doc. 191. NAMB filed an Answer to the Supplemental Pleading on December 21, 2022. *See* Doc. 198. These are the operative pleadings at this stage of the case.

**The Separation Agreement Between BCMD and Dr. McRaney**

In July 2015, Dr. McRaney and his former employer, BCMD, entered into a Separation Agreement and Release ("Separation Agreement"). NAMB was not a signatory or party to the Agreement.

The Agreement provides it should be "construed and governed in accordance with the laws of the State of Maryland." Doc. 37-1 at 7 (Section 15). The Agreement also provides: "All suits, proceedings and other actions related to, arising out of or in connection with this Agreement shall be brought exclusively" in state or federal court in Maryland. *Id*.

**NAMB's Motions for Partial Summary Judgment Based on the Separation Agreement**

Although not included as a defense in its original Answer (Doc. 3), NAMB has filed two motions for partial summary judgment based on the claim that the Separation Agreement to which it was not a party—and which it did not possess until after this lawsuit was underway—released it from liability for certain of Dr. McRaney's claims. *See* Doc. 48; Doc. 79 (NAMB's Motions for Partial Summary Judgment).

In each motion, NAMB has contended that, at the time of Plaintiff's execution of the Separation Agreement and Release, it was a "supporting organizations'" of BCMD and it sought partial summary judgment on the theory that NAMB was released in the Separation Agreement. *See* Doc. 80 at 4-8 (citing Section 5, "General Release," of the Separation Agreement).

On January 12, 2022, this Court denied NAMB's motion for partial summary judgment as premature, and directed the completion of discovery. *See* Doc. 93.

4

**Discovery Concerning NAMB's Claim to Be a "Supporting Organization" of BCMD**

Since the Court's January 12, 2022 Order, Plaintiff has conducted discovery related to NAMB's claim that it was released by the Separation Agreement between Dr. McRaney and BCMD. That discovery included a Request for Production from Dr. McRaney (Request #7), seeking: "All documents in Your possession, custody or control mentioning, referring to, describing, or using, the phrase 'supporting organization.'" Doc. 154-1 at 2. NAMB refused to produce documents responsive to that Request, and Plaintiff was forced to file a motion to compel (Doc. 154; Doc. 155), which Judge Sanders granted on December 7, 2022. *See* Doc. 190. Having been ordered to provide Plaintiff with all responsive documents, NAMB eventually produced over 3,400 pages of documents in response to Request #7.

On September 30, 2022, Plaintiff timely filed reports from two experts—Dr. David Sharp, an economist, and Dr. Barry Hankins, a Professor of History at Baylor University. Both Dr. Sharp and Dr. Hankins have explained some of the reasons why it makes no sense for NAMB to contend it was a "supporting organization" of BCMD at the time the Separation Agreement was executed. *See* Doc. 133-1 at 13-14; Doc. 134-1 at 16-18.

Plaintiff also conducted several depositions, and served an Interrogatory, that elicited testimony relevant to NAMB's claim that it was released by the Separation Agreement.

Relevant facts from discovery are set forth immediately below.

**FACTS THAT CANNOT BE GENUINELY DISPUTED AND RECORD CITATIONS**

1. During the summer of 2015, Dr. McRaney and BCMD entered into a Separation Agreement. *See* Doc. 37-1.

2. NAMB was not a party to the Separation Agreement. *See* Doc. 37-1.

3. NAMB was unaware of the Separation Agreement until after it was fully executed, playing no role in the negotiation or drafting of the Agreement. *See* Exhibit A[3] (NAMB's Responses to Plaintiff's Second Set of Interrogatories at 4(a)).

4. NAMB never received a draft of the Separation Agreement. *See* Exhibit A (NAMB's Responses to Plaintiff's Second Set of Interrogatories at 4(c)).

5. For some time after the Separation Agreement was executed, counsel for BCMD declined to provide a copy of the Separation Agreement to NAMB. *See* Exhibit A (NAMB's Responses to Plaintiff's Second Set of Interrogatories at 4(e)).

6. NAMB was unaware of the contents of the Separation Agreement until it received a copy after Plaintiff filed his lawsuit against NAMB (in April 2017). *See* Exhibit A (NAMB's Responses to Plaintiff's Second Set of Interrogatories at 4(b)).

7. The term "supporting organization" is undefined in the Separation Agreement. *See* Doc. 37-1.

8. The term "supporting organization" is well-known in the world of non-profit organizations, including many religious organizations, with a specific and clear meaning. *See* Doc. 85-1 (Declaration of Charles R. Lindsay, CPA at ¶¶ 6-8); Doc. 134-1 (Expert Report of D.C. Sharp at ¶ 44).

---

[3] Exhibit references in this Memorandum are to the Exhibits to the Declaration of Scott E. Gant filed with Plaintiff's Motion.

9.     NAMB's Chief Accounting Officer and Controller, Matthew Smith, used the term "supporting organization" as it is used in connection with the Internal Revenue Code. Exhibit B (NAMB 30(b)(6) Dep. Tr. at 183:21-24; NAMB 30(b)(6) Dep. Exh. 22). Mr. Smith also participated in an email exchange which used the term "supporting organization" as it is used in connection with the Internal Revenue Code. Exhibit B (NAMB 30(b)(6) Dep. Tr. at 182:14-184:2; NAMB 30(b)(6) Dep. Exh. 20).

10.    NAMB produced a version of its Consolidated Financial Statements and Report of Independent Certified Accountants uses the term "supporting organization" as it is used in connection with the Internal Revenue Code. Exhibit B (NAMB 30(b)(6) Dep. Tr. at 185:6-14; NAMB 30(b)(6) Dep. Exh. 21).

11.    In the same document, NAMB is described as a support*ed* organization—the opposite of a support*ing* organization. *Id*.

12.    At the 30(b)(6) deposition of NAMB, its witness was unable to provide any facts to dispute or disprove that NAMB is classified as a support*ed* organization. Exhibit B (NAMB 30(b)(6) Dep. Tr. at 187:23-188:4).

13.    "NAMB does not contend . . . it is a supporting organization under the [Internal Revenue Code]." *See* Doc. 89 at 2, 8; Doc. 169 at 5 ("NAMB has repeatedly confirmed it is not claiming to be a supporting organization of BCMD within the meaning of the tax code.").

14.    NAMB's Articles of Incorporation do not describe or identify NAMB as a supporting organization of BCMD. Exhibit C (Carlos Ferrer Dep. Exh. 14, NAMB 0039-44); *see* Exhibit C (Carlos Ferrer Dep. Tr. at 167:19-25).

15. Former NAMB Chief Financial Officer, Carlos Ferrer, testified that he is "fairly familiar" with the term "supporting organization" "used in connection with the Internal Revenue Code." *See* Exhibit C (Carlos Ferrer Dep. Tr. at 166:24-167:14).

16. Mr. Ferrer testified that NAMB is not a supporting organization of any entity, as that term is used in connection with the Internal Revenue Code. *See* Exhibit C (Carlos Ferrer Dep. Tr. at 167:15-22).

17. NAMB Vice President, Steve Davis, who had responsibility at NAMB for its relationship with BCMD at the time Dr. McRaney was terminated by BCMD, and at the time the Separation Agreement was executed (Steve Davis Dep. Tr. at 33:8-12), testified he did not recall ever hearing the term "supporting organization" used when he worked at NAMB. *See* Exhibit D (Steve Davis Dep. Tr. at 254:15-19).

18. Mr. Davis also testified he did not recall ever hearing anyone "describe NAMB as a supporting organization of BCMD." *See* Exhibit D (Steve Davis Dep. Tr. at 256:18-22).

19. NAMB's Executive Vice President of Public Relations, Mike Ebert, disclosed in emails that NAMB's defense that it is a supporting organization of BCMD is "limited to the facts of ***this specific case*** . . . ." *See* Exhibit E (Mike Ebert Dep. Exhs. 30, 31) (emphasis added).

20. During the years Plaintiff was employed by BCMD (*i.e.*, 2013 to 2015), BCMD provided more financial support to NAMB than NAMB provided to BCMD. *See* Doc. 134-1 (Expert Report of D.C. Sharp at ¶ 47).

21. Bill Warren, who served as President of BCMD when Dr. McRaney was terminated, and when the Separation Agreement was executed, testified that BCMD gave more money to NAMB than it received from NAMB, stating that: "if the definition of a supporting organization means that they give us [BCMD] more money than we give them, then – then they're

8

[NAMB] not a supporting organization . . . ." *See* Exhibit F (William Warren Dep. Tr. at 271:3-7); *see also* Doc. 263-4 (full deposition transcript).

22. The expert report of Dr. Sharp states: "The Defendant's argument that NAMB is a 'supporting organization' of BCMD makes no sense to me as an economist given that, throughout the relevant period, BCMD provided more financial support to NAMB than NAMB provided to BCMD." *See* Doc. 134-1 (Expert Report of D.C. Sharp at ¶ 14; *see also id*. at ¶ 47).

23. The expert report of Dr. Hankins explains his opinion why, as a scholar and observer of Southern Baptist entities and organizations, he concluded that NAMB's purported interpretation of the term "supporting organization" in the Agreement is wrong. *See* Doc. 133-1 (Expert Report of Barry Hankins at p. 13-14).

24. Prior to execution of the Separation Agreement, Dr. McRaney's attorney, R. David (David) de Armas, "confirmed that BCMD annually sent substantially more money to [NAMB] than the NAMB sent to BCMD," and concluded "it was obvious that NAMB was not a supporting organization of the BCMD." Exhibit G (Danny de Armas Dep. Exh. 5 at ¶¶ 4-5).[4]

25. Before executing the Separation Agreement, Dr. McRaney specifically asked his attorney, David de Armas, whether the Separation Agreement "would preclude claims against NAMB." David de Armas advised Dr. McRaney that signing the Separate Agreement would not preclude claims by him against NAMB. Exhibit G (Danny de Armas Dep. Exh. 5 at ¶ 6).

26. David de Armas swore under oath that: "At no time did Dr. McRaney intend that his settlement with BCMD would release the NAMB for the harm caused by the NAMB, nor did

---

[4] Danny de Armas is a former Chairman of NAMB's Board of Trustees, and the brother of Dr. McRaney's attorney handling the Separation Agreement, R. David (David) de Armas. Danny testified at his deposition that he considers his brother David to be honest, that David would not lie, and that Danny expects information in an affidavit executed by his brother to be true and accurate. Exhibit G (Danny de Armas Dep. Tr. at 68:10-21).

the release executed by Dr. McRaney serve to release the NAMB." Exhibit G (Danny de Armas Dep. Exh. 5 at ¶ 7).

## ARGUMENT

I. **The Separation Agreement's Mandatory Forum Selection Provision Forecloses NAMB's Claim in This Court That It Was Released Under the Agreement**

While NAMB's claim that it was released by the Separation Agreement between Dr. McRaney and BCMD is devoid of legal or factual support, NAMB is foreclosed from making that argument to this Court because NAMB is flagrantly violating the forum selection clause of the very agreement is it invoking in its defense.

Section 15 of the Separation Agreement provides: "All suits, proceedings and other actions *relating to*, arising out of or *in connection with* this Agreement **shall** be brought **exclusively**" in state or federal court in Maryland. *See* Doc. 37-1 at 7 (emphasis added).

The Supreme Court has made clear that "[w]hen parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations." *Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas*, 571 U.S. 49, 66 (2013); *see also Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring) ("[E]nforcement of valid selection clauses, bargained for by the parties, protects their legitimate expectations and further vital interests of the justice system.").

Thus, the Fifth Circuit, "in keeping with Supreme Court precedents, applies a strong presumption in favor of the enforcement of mandatory FSCs," like the one in the Separation Agreement. *Weber v. PACT XPP Technologies, AG*, 811 F.3d 758, 773 (5th Cir. 2016); *id*. at 768 ("A mandatory FSC affirmatively requires that litigation arising from the contract be carried out in a given forum."). And this presumption has no less force when a forum selection clause appears

10

in an agreement applied to a non-signatory. *See*, *e.g.*, *In re Lloyd's Register North America, Inc.*, 780 F.3d 283 (5th Cir. 2015) (finding district court erred by not applying forum selection clause to non-signatory).

Here, NAMB (baselessly) asserts four Defenses based on the claim it was released by the terms of the Separation Agreement. Yet NAMB flouts the clear, mandatory forum selection clause of the Agreement by making its arguments in this District, rather than the in forum required by the Agreement. NAMB could have brought an action in Maryland seeking a declaratory judgment that it was released by the Separation Agreement. But it failed to do so. NAMB also could have sought to transfer this case to federal court in Maryland—relief often granted by courts to enforce a valid forum selection clause. *See*, *e.g.*, *Atlantic Marine*, 571 U.S. at 59 (Section 1404(a) "provides a mechanism for enforcement of forum selection clauses that point to a particular federal district."); *Stewart*, 487 U.S. at 32 (applying 1404(a) to forum selection clause dispute). But it failed to do that either.

NAMB cannot have it both ways—press its (meritless) defenses based on the Separation Agreement, yet fail to abide by the Agreement's forum selection provision. The doctrines of waiver, judicial estoppel,[5] and the Court's inherent power, all support the entry of summary judgment for Plaintiff with respect to NAMB's Separation Agreement Defenses. The Court need not reach the merits of NAMB's defenses, addressed below.

---

[5] *See New Hampshire v. Maine*, 532 U.S. 742 ,742–43 (2001) (explaining that to protect the integrity of the judicial process a party should not be permitted to take a position that is "clearly inconsistent" with an earlier position, thereby deriving an unfair advantage or imposing an unfair detriment on the opposing party).

## II. NAMB Was Not a "Supporting Organization" of BCMD

If the Court does reach the merits of NAMB's Separation Agreement Defenses, Plaintiff is entitled to summary judgment because the law and the facts demonstrate that NAMB was not a supporting organization of BCMD when the Separation Agreement was executed (or at any other time).

### A. Maryland Law Principles of Contract Interpretation

The Separation Agreement provides it is to be "construed and governed in accordance with the laws of the State of Maryland." Doc. 37-1 at 7 (Section 15).

**Objective Interpretation of Contracts**

Maryland uses the law of the objective interpretation of contracts, which means the search to determine the meaning of a contract is focused on the four corners of the agreement. *See Expo Properties, LLC v. Experient, Inc.*, 956 F.3d 217, 224 (4th Cir. 2020). Under this approach, if the language of the contract is unambiguous, courts interpret the contract "based on what a reasonable person in the position of the parties would have understood the language to mean and not 'the subjective intent of the parties at the time of formation.'" *Credible Behavioral Health, Inc. v. Johnson*, 466 Md. 380, 393, 220 A.3d 303, 310 (2019). "Thus, 'the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract.'" *Maryland Cas. Co. v. Blackstone Int'l Ltd.*, 442 Md. 685, 114 A.3d 676, 694 (2015) (citing *Long v. State*, 371 Md. 72, 84, 807 A.2d 1, 8 (2002) (quoting *Slice v. Carozza Props., Inc.*, 215 Md. 357, 368, 137 A.2d 687, 693 (1958))).

Only "[w]here a court determines contractual language to be ambiguous, [do] the narrow bounds of the objective approach give way, and the court is entitled to consider extrinsic or parol evidence to ascertain the parties' intentions." *Credible Behavioral Health*, 466 Md. at 394.

12

Ambiguity arises when a term of a contract, as viewed in the context of the entire contract and from the perspective of a reasonable person in the position of the parties, is susceptible to more than one meaning. *Impac Mortg. Holdings, Inc. v. Timm*, 474 Md. 495, 255 A.3d 89, 96 (2021). In such instances, extrinsic evidence "should be considered in arriving at the intention of the parties, and the apparent meaning and object of their stipulations should be gathered from all possible sources." *Belleview Constr. Co. v. Rugby Hall Cmty. Ass'n*, 321 Md. 152, 157-158 (1990). To be admissible, extrinsic evidence of intent as to the meaning of a contract term "must demonstrate 'an intent made manifest, not a secret intent' at the time of contract formation." *Impac*, 255 A.3d at 96 (quoting *Gov't Emps. Ins. Co. v. Coppage*, 240 Md. 17, 25-26, 212 A.2d 523, 528 (1965)). Retrospective, subjective, and unexpressed views about the contract are not proper extrinsic evidence: "It is the intention of the parties as expressed in their words and the paper which they sign, not their own interpretation as to what their statements and acts were supposed to mean, which is determinative." *Id*. at 96 (quoting *Coppage*, 240 Md. at 25). If the extrinsic evidence presents disputed factual issues bearing upon the ambiguity, "construction of the contract must await resolution of that dispute by a factfinder, which may be a court or jury." *Id*. at 96-97 (citing *Truck Ins. Exchange v. Marks Rentals, Inc*., 288 Md. 428, 433, 418 A.2d 1187, 1190 (1980)).

**Undefined Terms and Ordinary Meaning**

Under Maryland law, when a term used in a contract is undefined, the term should be ascribed its ordinary meaning, "best done" by referring to dictionary definitions, and other similar authoritative sources about its meaning. *Metro. Life Ins. Co. v. Promenade Towers Mut. Hous. Corp.*, 84 Md. App. 702, 718 (1990); *see also In re Solomons One, LLC*, 2014 WL 846084 at *8 (Bankr. D. Md. 2014) (using "standard definition" of term "claim" because not defined in

13

agreement). Courts should "avoid interpreting contract language between two parties in a manner that is void of a commonsensical perspective." *Fister ex rel. Estate of Fister v. Allstate Life Ins. Co.*, 366 Md. 201, 219 (2001).

  **B. While Undefined in the Agreement, the Term "Supporting Organization" Has a Specific and Clear Meaning With Respect to Non-Profit Organizations**

  While the term "supporting organization" is undefined in the Agreement, its ordinary meaning is clear. "A supporting organization, in the United States, is a public charity that operates under the U.S. Internal Revenue Code in 26 USCA 509(a)(3)."). *See* Supporting organization (charity) - Wikipedia[6]; *see also* Philanthropy Dictionary | Philanthropy Terms | NPTrust ("A supporting organization is a charity that is not required to meet the public support test because it supports a public charity. To be a supporting organization, a charity must meet one of three complex legal tests that assure, at a minimum, that the organization being supported has some influence over the actions of the supporting organization."); Bruce R. Hopkins, Nonprofit Law Dictionary 416 (2015); *see also* Supporting Organizations - Requirements and Types | Internal Revenue Service (irs.gov). This ordinary, objective understanding of the term, is reflected in myriad articles, treatises and court cases. *See*, *e.g.*, Alyssa A. DiRusso, *Supporting the Supporting Organization: The Potential and Exploitation of 509(A)(3) Charities*, 39 Ind. L Rev. 207 (2006); *Quarrie v. Commissioner of Internal Revenue*, 603 F.2d 1274 (7th Cir. 1979) (discussing requirements to qualify as a supporting organization); *Polm Family Foundation, Inc. v. United States*, 644 F.3d 406, 408 (D.C. Cir. 2011) (same); 26 CFR § 1.509(a)-4(a)(5) ("For purposes of

---

[6] The Agreement "shall be construed . . . in accordance with the laws of the State of Maryland," and Maryland courts utilize Wikipedia as a source for identifying the meaning of terms. *See*, *e.g.*, *Azam v. Carroll Independent Fuel, LLC*, 240 Md. App. 1, 15 (2019) (citing Wikipedia to identify the "standard definition" of "Jobber").

14

this section, the term *supporting organization* means either an organization described in section 509(a)(3) or an organization seeking section 509(a)(3) status, depending upon its context.").

This ordinary meaning of "supporting organization" is also confirmed by NAMB's own use of the term in the same way it is employed with reference to the Internal Revenue Code. For example, NAMB's Chief Accounting Officer and Controller, Matthew Smith, used the term "supporting organization" as the term is used in connection with the Internal Revenue Code. And NAMB's own Consolidated Financial Statements and Report of Independent Certified Accountants used the term "supporting organization" as it is used in connection with the Internal Revenue Code, and also described NAMB as a support*ed* organization—the opposite of a support*ing* organization.

The Declaration of Charles Lindsay (Doc. 85-1), and expert report of Dr. Sharp (Doc. 134-1) further confirm the propriety of this interpretation of the term "supporting organization." Their opinions were unrebutted by NAMB, which did not file or serve any expert reports.

Because NAMB concedes it is not a supporting organization of BCMD within the meaning of the Internal Revenue Code (Doc. 89 at 2, 8; Doc. 169 at 5), its Separation Agreement Defenses accordingly all fail.

      **C.    NAMB's Proposed Definition of "Supporting Organization" is Amorphous and Contrary to Maryland Law**

In place of the clear and well-established understanding of the term "supporting organization," NAMB has previously offered the Court its alternative interpretation: "an organization that supports BCMD." Doc. 89 at 2. In addition to being a circular definition, NAMB's amorphous notion of a "supporting organization" invites this Court to adopt a definition of supporting organization that departs from ordinary usage and would violate basic principles of Maryland law governing contract interpretation.

15

The Court of Appeals of Maryland has "oft stated" that "a court may not create ambiguity or uncertainty where none otherwise exists." *Fister*, 366 Md. at 217-18. Moreover, courts applying Maryland law should "avoid interpreting contract language between two parties in a manner that is void of a commonsensical perspective." *Id*. at 219.

In contrast with the clear, objective, ordinary meaning of "supporting organization" described above, including in the Declaration of Charles Lindsay and expert report of Dr. Sharp, NAMB advances a view of supporting organization that is subjective, open-ended, and defies commonsense.

Maryland law does not permit the displacement of the clear, objective, ordinary meaning of "supporting organization" described here by Plaintiff with NAMB's subjective and open-ended conception. NAMB's approach would "create ambiguity or uncertainty where none otherwise exists," and defy commonsense. *Id*. at 217-18.

**D. Discovery Confirmed that NAMB Was Not a "Supporting Organization" of BCMD**

While NAMB's claim it was released by the Separation Agreement fails as a matter of law, discovery revealed facts which further demonstrate that NAMB was not a supporting organization of BCMD at the time the Separation Agreement was negotiated and executed. For example:

- NAMB's Chief Accounting Officer and Controller, Matthew Smith, used the term supporting organization in NAMB correspondence as the term is employed in connection with the Internal Revenue Code.

- NAMB's own Consolidated Financial Statements and Report of Independent Certified Accountants for 2010 and 2011 used the term "supporting organization" as the term is employed in connection with the Internal Revenue Code.

- In the same Report, NAMB is described as a support*ed* organization—the opposite of a support*ing* organization.

- NAMB's 30(b)(6) witness was unable to provide any facts to dispute or disprove that NAMB is classified as a support*ed* organization.

16

- NAMB Vice President, Steve Davis, who had responsibility for NAMB's relationship with BCMD at the time Dr. McRaney was terminated by BCMD, and at the time the Separation Agreement was executed, testified he did not recall ever hearing the term "supporting organization" used when he worked at NAMB.

- Mr. Davis also testified he did not recall ever hearing anyone "describe NAMB as a supporting organization of BCMD."

- During the years Plaintiff was employed by BCMD (*i.e.*, 2013 to 2015), BCMD provided more financial support to NAMB than NAMB provided to BCMD.

- Professor Hankins explained his opinion why, as a scholar and observer of Southern Baptist entities and organizations, he concluded (unrebutted by an expert for NAMB) that NAMB's claim to be a "supporting organization" of BCMD is wrong. *See* Doc. 133-1 at 13-14.

Taking account of these facts, it is apparent that NAMB's Executive Vice President of Public Relations, Mike Ebert, said the quiet part out loud when he admitted in emails that NAMB's claim it is a "supporting organization" of BCMD was conjured up for this matter alone, stating that defense is "limited to the facts of this specific case . . . ."

### III. Under Maryland Law NAMB is Not Entitled to Enforce the Separation Agreement

"At common law, only a party to a contract could bring suit to enforce the terms of a contract." *Allen v. Bank of Am., N.A.*, 933 F. Supp. 2d 716, 726 (D. Md. 2013). While the common law rule has expanded to allow third-party beneficiaries to enforce the terms of a contract, "Maryland law is *quite restrictive* on the issue of whether one may be considered a third-party beneficiary." *CX Reinsurance Co., Ltd. v. Levitas*, 207 F. Supp. 3d 566, 570 (D. Md. 2016), *aff'd*, 691 F. App'x 130 (4th Cir. 2017) (emphasis added).

"An individual is a third-party beneficiary to a contract if the contract was intended for his or her benefit and it clearly appears that the parties intended to recognize him or her as the primary party in interest and as privy to the promise. It is not enough that the contract merely operates to an individual's benefit: An incidental beneficiary acquires by virtue of the promise no right against

17

the promisor or the promisee." *CR–RSC Tower I, LLC v. RSC Tower I, LLC*, 429 Md. 387, 56 A.3d 170, 212 (2012); *Cushman & Wakefield of Maryland, Inc. v. DRV Greentec, LLC*, 463 Md. 1, 7, 203 A.3d 835, 838 (2019) ("A person is a third-party beneficiary only where the promise sought to be enforced was intended for that person's benefit and the parties intended to recognize that person as the primary party in interest with respect to that promise.").

The "crucial fact" for determining whether a party can enforce a contract as a third-party beneficiary is "whether the pertinent provisions in the contract were 'inserted ... to benefit' the third party." *Allen*, 933 F. Supp. 2d at 726 (citing *CR–RSC Tower I*, 56 A.3d at 212).

Applying these principles of Maryland law to the undisputed facts, it is obvious that NAMB is not a third-party beneficiary of the Separation Agreement:

- NAMB was not a party to the Separation Agreement.

- NAMB played no role in the negotiation or drafting of the Separation Agreement.

- NAMB never received a draft of the Separation Agreement.

- NAMB was unaware of the Separation Agreement until after it was fully executed.

- For some time after the Separation Agreement was executed, counsel for BCMD declined to provide a copy to NAMB.

- NAMB was unaware of the contents of the Separation Agreement until almost two years later, when NAMB received a copy after Plaintiff filed his lawsuit against NAMB.

- Before executing the Separation Agreement, Dr. McRaney specifically asked his attorney, David de Armas, whether the Separation Agreement "would preclude claims against NAMB." Mr. de Armas advised Dr. McRaney that signing the Separate Agreement would not preclude claims by him against NAMB.

- David de Armas swore under oath that: "At no time did Dr. McRaney intend that his settlement with BCMD would release the NAMB for the harm caused by the NAMB, nor did the release executed by Dr. McRaney serve to release the NAMB."

Because Maryland law does not permit NAMB to enforce the Separation Agreement, NAMB's Separation Agreement Defenses must be rejected.

## CONCLUSION

For the foregoing reasons, summary judgment should be granted in favor of Plaintiff with respect to NAMB's Separation Agreement Defenses (Defenses 4-7).

May 18, 2023

Respectfully Submitted,

*William Harvey Barton*

William Harvey Barton, II
BARTON LAW FIRM, PLLC
3007 Magnolia Street
Pascagoula, MS 39567
Phone: (228) 769-2070
harvey@wbartonlaw.com

*Scott E. Gant*

Scott E. Gant
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Phone: (202) 237-2727
sgant@bsfllp.com