**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

WILL McRANEY                                                                    PLAINTIFF

v.                                                             No. 1:17cv080-GHD-DAS

THE NORTH AMERICAN MISSION BOARD
OF THE SOUTHERN BAPTIST CONVENTION, INC.            DEFENDANT

---

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT WITH RESPECT TO NAMB'S "SEPARATION
AGREEMENT DEFENSES"**

---

**Introduction**

When Plaintiff's employment with BCMD ended in 2015, he accepted tens of thousands of dollars and promised peace in exchange—he released BCMD and its "supporting organization[s]" from liability. There is no question that NAMB is a supporting organization of BCMD—even Plaintiff has in writing acknowledged the support NAMB provides to BCMD. And BCMD has rightfully characterized this lawsuit as "exactly the type of end-around that was foreclosed and released by Dr. McRaney's settlement agreement with BCMD." Dkt. No. 38 at 2. Nonetheless, apparently dissatisfied with the release he chose to grant, Plaintiff now tries through his Motion for Partial Summary Judgment (the "Motion") to obfuscate with belated and incorrect arguments about forum selection clauses, third-party beneficiaries, and irrelevant technical definitions under the Internal Revenue Code ("IRC"). The Court should see through it all, deny Plaintiff's Motion, and grant NAMB's pending Motion for Summary Judgment, Dkt. No. 264 ("NAMB MSJ").

*First*, after *six years* of litigation, Plaintiff argues that this Court is suddenly the wrong forum because the Separation Agreement contains a forum selection clause that selects Maryland; Plaintiff thus now argues that, though he filed this case in Mississippi, the affirmative defense of release must be adjudicated in Maryland. This position is contrary to law, the text of the forum selection clause, and common sense. The forum selection clause specifies where a *suit can be brought*, not where an affirmative defense can be asserted. It would be nonsensical to hold that a defendant must initiate a separate litigation in another jurisdiction in order to advance an affirmative defense. Regardless, whatever rights Plaintiff had under the forum selection clause have been long since waived because he chose to sue in Mississippi and continued to litigate in Mississippi even after NAMB raised the release as an affirmative defense in its Answer in 2017.

*Second*, Plaintiff argues that NAMB cannot have the benefit of the release because NAMB did not sign the Separation Agreement and supposedly is not a third-party beneficiary of it. This

1

runs directly contrary to controlling law, which holds that a court applies a release according to its terms, including in favor of third parties. Indeed, the case law is rife with examples of even highly generic releases (*e.g.,* in favor of "all persons") being applied in favor of strangers to the contracts containing the releases.

*Finally*, Plaintiff tries to dodge the release by contending that NAMB does not meet the definition of "supporting organization" under the IRC. Plaintiff, however, cites no evidence that the contracting parties intended the Separation Agreement to employ that technical definition (or even were aware such definition existed). Under the appropriate analysis whereby a court interprets terms according to their ordinary meaning, NAMB is unquestionably a "supporting organization" of BCMD and was thus released pursuant to the Separation Agreement.

In sum, by cross moving for summary judgment, Plaintiff has conceded that no genuine dispute of material fact forestalls resolution of the release issue. The Court needs only to apply the plain meaning of the Separation Agreement, disregard Plaintiffs' red herring arguments, grant judgment in favor of NAMB, and prevent the end run around the release Plaintiff chose to grant.

**Undisputed Facts**

NAMB summarized the undisputed material facts in its motion for summary judgment (*see* NAMB MSJ at 1-6) and recites them here only insofar as they pertain the instant Motion.

In 2012, NAMB and BCMD entered a Strategic Partnership Agreement (the "SPA"), which established NAMB as a "financially supporting partner[]" of BCMD and confirmed "NAMB's support" of BCMD's "strategic plan." NAMB Ex. 1 at NAMB-0003-04.[1] While Plaintiff was Executive Director of BCMD, he described "NAMB's role" as to "provid[e] support" to BCMD in

---

[1] The exhibits NAMB attached to the NAMB MSJ, *see* Dkt. No. 263, are cited to in this Memorandum as "NAMB Ex. []." The exhibits Plaintiff attached the instant Motion, *see* Dkt. No. 265, are cited to in this Memorandum as "Pl. Ex. []."

2

connection with the SPA's guidelines. NAMB Ex. 26 at NAMB 6612. BCMD's President, William Warren, likewise described NAMB as a "supporting organization of BCMD." NAMB Ex. 3 at 153:18-154:2; *see also* Dkt. No. 38 at 2 ("Dr. McRaney has brought suit [] against one of the Convention's primary supporting organizations.").

Plaintiff served as Executive Director of BCMD until, on June 8, 2015, BCMD decided to terminate him. *See* NAMB Ex. 13. BCMD then provided Plaintiff with an opportunity to resign pursuant to a severance agreement, which Plaintiff negotiated and signed in July 2015. *See* NAMB Ex. 17 (the "Separation Agreement"). The Separation Agreement provided Plaintiff with almost $70,000, reimbursement for health insurance premiums and the ability to retain certain equipment provided to him by BCMD. *See id.* at BCMD_0631. In exchange, Plaintiff "release[d] and forever discharge[d]" BCMD and "supporting organizations" of BCMD (among other third parties) from "any and all actions, causes of action, suits, claims, debts, liabilities, obligations, covenants, contracts and demands whatsoever, administratively, at law or in equity, which [Plaintiff] ever had, now has or may have, whether known or unknown, foreseen or unforeseen, actual or potential . . . arising from or related to, directly or indirectly, [Plaintiff's] employment with [BCMD], or the termination thereof . . . ." *Id.* at BCMD_0632. The Separation Agreement contained a non-exhaustive list of claims included within the scope of the release, including "any rights or claims for any tort that [Plaintiff] may allege, including any claim of negligence . . . and any claim of intentional tort (including libel, slander, assault, battery, and intentional infliction of emotional distress)." *Id.* at BCMD_0633. The Separation Agreement also contained a covenant not to sue, pursuant to which Plaintiff agreed "not to file or participate in any civil action, law suit, claim, grievance, complaint or charge with any court . . . concerning or relating to any claim or matter released in [the Separation Agreement]." *Id.* at BCMD_0634.

3

The Separation Agreement also included a forum selection clause, requiring "[a]ll suits, proceedings and other actions relating to, arising out of or in connection with" the Separation Agreement to be "brought" in the Circuit Court for Howard County, Maryland, or in Maryland federal court. *Id.* at BCMD_0636.

In April 2017, Plaintiff initiated this action in Mississippi state court. *See* Dkt. No. 1. Defendants removed on May 18, 2017. *Id.* Plaintiff's case is, as BCMD described it, "exactly the type of end-around that was foreclosed and released by Dr. McRaney's settlement agreement with BCMD." Dkt. No. 38 at 2. Accordingly, on August 23, 2021, NAMB moved for summary judgment based, in part, on Plaintiff's release of claims under the Separation Agreement. *See* Dkt. Nos. 79, 80. The Court denied the motion pursuant to Federal Rule of Civil Procedure 56(d), "pending the completion of discovery in this matter," noting that NAMB "may refile the present motion upon completion of discovery in this matter." Dkt. No. 93 at 1-2. Discovery is now complete.

NAMB moved for summary judgment as to the whole case (*see* Dkt. No. 264); Plaintiff moved for partial summary judgment as to the release. Dkt. No. 266.

## Argument

### I. NAMB Is Entitled to Judgement Based on Release

NAMB's Motion for Summary Judgment establishes that NAMB is entitled to summary judgment based on the affirmative defense of release. *See* NAMB MSJ at 11-13. To avoid repetition, that argument is incorporated herein by reference; NAMB addresses herein only specific points raised in Plaintiff's Motion. In short, Plaintiff's Motion: (i) confirms that the release issue is ripe for judgment because both parties agree that there are no disputed issues of material fact, but (ii) fails to advance any argument that forestalls summary judgment in favor of NAMB. Plaintiff advances three arguments (addressed in the three sections below), but none has merit.

4

### A. The Forum Selection Clause Is Irrelevant

Plaintiff first argues that the Separation Agreement's forum selection clause (selecting Maryland) precludes NAMB from arguing the affirmative defense of release in this Court. Mot. at 10-11. It is deeply ironic that, after forum shopping six years ago to sue in Mississippi based on a very tenuous connection to this case,[2] Plaintiff now apparently has buyers' remorse and does not want certain issues litigated here. Fortunately, Plaintiff's position is incorrect in many respects.

*First*, the forum selection clause is irrelevant because it speaks to the venue for filing *lawsuits* not asserting *affirmative defenses*. The clause states that "suits, proceedings and other actions" must be "brought" in Maryland. NAMB Ex. 17 at BCMD_0636. NAMB's argument concerning the release, however, is not the assertion of a "suit[]", "proceeding[]" or "other action[]." Rather, under the Federal Rules, it is the assertion of an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1) (listing "release" among affirmative defenses that defendant may raise in answer). Nothing in the forum selection clause purports to limit the fora for the assertion of affirmative defenses.

Indeed, such a result would be nonsensical because it would mean Plaintiff could disregard the forum selection clause (*e.g.*, by suing in Mississippi) and then in that same litigation block NAMB from asserting affirmative defenses. Unsurprisingly, *none* of the cases Plaintiff cites holds or suggests that a plaintiff can do so. Rather, every case cited concerns a plaintiff's *filing of a*

---

[2] The vast majority of the facts and conduct relevant to this case occurred in Maryland, Georgia, and other places outside of Mississippi. *See generally* Supplemental Pleading, Dkt. No. 191. The *only* nexus between Plaintiff's claims and this judicial district is his (false) allegation that NAMB caused him to be disinvited from a religious speaking engagement at a church located in Louisville, Mississippi. *See id.* ¶ 28. As Pastor Rob Paul, the organizer of the event, told Plaintiff at the time he filed this lawsuit, "the sole legal tie to [Mississippi] is based on your imagination. The attorneys I have talked to in our area are scratching their heads as to why this action was filed in Winston County." NAMB Ex. 22 at WM01023; *see also* NAMB Ex. 21 at 58:3-7 (Pastor Paul testifying that Plaintiff's decision to file the case in Winston County was significant to him "[b]ecause he was basing the entire claim against NAMB on the assumption or his belief that I was told to uninvite him.").

*lawsuit* that violated a forum selection clause. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 53, 59-61 (2013) (articulating mechanism by which defendant may enforce forum selection clause where plaintiff filed suit in different jurisdiction); *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 765 (5th Cir. 2016) (affirming dismissal based on *forum non conveniens* where plaintiff filed suit in United States instead of Germany, as required by forum selection clause); *In re Lloyd's Register N. Am., Inc.*, 780 F.3d 283, 291-92 (5th Cir. 2015) (confirming that forum selection clauses can be enforced against non-signatories to contracts). Thus, there is no textual or legal basis to use the forum selection clause to block the adjudication of an affirmative defense.

*Second*, Plaintiff long ago waived whatever rights he had under the forum selection clause. Forum selection clauses are waivable. *See Hampton v. Equity Tr. Co.*, 736 F. App'x 430, 435 (5th Cir. 2018).[3] There are two approaches to waiver, the first of which concerns whether a party "intentionally or voluntarily relinquished its rights under the clause." *Wellogix, Inc. v. SAP Am., Inc.*, 648 F. App'x 398, 401 (5th Cir. 2016). Under this approach, a party waives a forum selection clause if the party has "(1) an existing right, benefit, or advantage; (2) actual or constructive knowledge of its existence; and (3) actual intent to relinquish that right." *Hampton*, 736 F. App'x at 435 (quoting *SGIC*, 839 F.3d at 426). The second approach holds that a party waives a forum selection clause if it "engages in conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." *Id.* (internal quotation marks omitted). Under this approach, "the party to the forum selection clause waives its right if it (1) substantially

---

[3] Courts generally find that the enforceability of a forum selection clause is a procedural matter governed by federal law. *See, e.g.*, *SGIC Strategic Glob. Inv. Cap., Inc. v. Burger King Eur. GmbH*, 839 F.3d 422, 426 (5th Cir. 2016); *Whiting-Turner Contracting Co. v. Westchester Fire Ins. Co.*, 2013 WL 3177881, at *3 (D. Md. Jun. 20, 2013).

invokes the judicial process in derogation of the forum selection clause and (2) thereby causes detriment or prejudice to the other party." *Id.*

Both waiver approaches are easily satisfied here. Plaintiff signed the Separation Agreement in 2015 containing a forum selection clause selecting Maryland. Plaintiff in 2017 nonetheless chose to sue in Mississippi, and in so doing waived any rights he had to insist on litigating in Maryland. *Whiting-Turner*, 2013 WL 3177881, at *4 (finding waiver of forum selection clause when party "has taken actions inconsistent with it or has delayed its enforcement").[4] Moreover, on May 18, 2017, NAMB filed its Answer and asserted release as its sixteenth affirmative defense. Dkt. No. 3. Plaintiff in response did not raise the forum selection clause, move to transfer or to dismiss for *forum non conveniens* (which Plaintiff states are the remedies for an asserted forum selection clause violation, *see* Mot. at 11), move to strike the affirmative defense, or in any way assert that the affirmative defense of release could not be litigated in Mississippi. Instead, Plaintiff litigated the case in Mississippi *for six years*, and only now, with his case on the precipice of adverse judgment, does he seek to enforce the forum selection clause.[5] Waiver does not get any clearer than that. *See*

---

[4] *See also, e.g., Electro-Mech. Corp. v. Riter Eng'g Co.*, 2011 WL 2118704, at *4 (D. Utah May 25, 2011) (holding plaintiff waived forum selection clause where it "chose to bring its claim in a separate forum and only sought to enforce the clause after counterclaims were brought against it under the Agreement."); *Jalin Realty Cap. Advisors, LLC v. A Better Wireless, NISP, LLC*, 2012 WL 838439, at *3-*5 (D. Minn. Mar. 12, 2012) (denying plaintiff's motion to transfer venue and request for arbitration based on finding that plaintiff had waived forum selection clause by filing suit in different venue); *Wildhawk Invs., LLC v. Brava I.P., LLC*, 2022 WL 18539509, at *4 (S.D. Iowa Feb. 28, 2022) (finding defendant waived forum selection clause by "act[ing] inconsistently with its right to invoke the forum selection clause and finding prejudice because invoking clause "would result in a duplication of effort"); *Solomon L. Grp., P.A. v. Dovenmuehle Mortg., Inc.*, 332 So. 3d 56, 59–60 (Fla. Dist. Ct. App. 2021) ("Initiating a lawsuit based on a contract in a jurisdiction other than the one provided under a forum selection clause under the contract would constitute a waiver of that party's right to enforce that clause."); *Peoples Bank v. Carter*, 132 S.W.3d 302, 307 (Mo. Ct. App. 2004) (finding waiver of forum selection clause by filing suit in a different jurisdiction).

[5] Indeed, when NAMB previously moved for summary judgment on this issue in 2021, *see* Dkt. No. 79, Plaintiff asked this Court to defer considering the issue pursuant to Federal Rule of Civil Procedure 56(d) "so that Plaintiff may obtain information through discovery relevant to adjudicating NAMB's motion." Dkt. No. 86 at 2-3. He then spent the next 18 months engaging in the very discovery he asked for. All of that constitutes litigation conduct inconsistent with enforcing the forum selection clause. *See Whiting-Turner*, 2013 WL 3177881, at *4.

*Hampton*, 736 F. App'x at 436-37 (finding waiver where defendant waited two years to argue forum selection clause); *Kelly v. Riverside Partners, LLC*, 397 F. Supp. 3d 75, 86 (D. Mass. 2019) (plaintiff "may not selectively seek to enforce a forum-selection clause that he has already violated and ignored").

Enforcement of the forum selection clause would also prejudice NAMB. "Prejudice ... refers to delay, expense, and damage to a party's legal position," and an untimely assertion of the right bears on the question of prejudice." *Hampton*, 736 F. App'x at 435–36. Plaintiff's failure to seek to enforce the forum selection clause during six years of litigation and extensive discovery would prejudice NAMB, and a transfer of venue at this late stage would duplicate effort and expense, in addition to wasting judicial resources. *See id.* at 436 (finding defendant waived venue challenge based on forum selection clause by delaying almost two years to raise the forum selection issue, taking depositions, and completing discovery, which constituted invocation of the judicial process sufficient to waive venue challenge). Plaintiff cannot "indefinitely reserve the right to seek enforcement of a forum-selection clause while it sought a merits determination in [another] court." *Id.*

*Finally*, Plaintiff cannot salvage his position by arguing that NAMB could have sought a declaratory judgment in Maryland or a transfer to Maryland. Mot. at 11. Even if NAMB could have done those things (which Plaintiff surely would have resisted), NAMB was not *required* to do so. As set forth above, forum selection clauses are waivable. Thus, once NAMB was sued in Mississippi, it had every right to simply proceed with its defense in that forum. *See Hampton*, 736 F. App'x. at 436-37. And part of the defense that the rules provide is the assertion of the release. *See* Fed. R. Civ. P. 8(c)(1).

In sum, Plaintiff's argument boils down to an attempt to invent a non-existent rule of law whereby a plaintiff can (i) choose a jurisdiction in disregard of a forum selection clause, (ii) litigate

8

there for six years through interlocutory appeals, discovery, and numerous motions, and then (iii) on the precipice of dismissal, belatedly argue that a particular affirmative defense is somehow barred from litigation in that jurisdiction by forum selection. That makes no sense and is not the law.

### B. Releases Can Cover Non-Signatories

Plaintiff next argues that NAMB supposedly is not a third-party beneficiary of the Separation Agreement and therefore is not entitled to "enforce" the release. Mot. at 17-19. This argument is incorrect in several respects.

Under Maryland law,[6] a release "must be read to release even claims against parties who gave no consideration for, had no knowledge of, and were not parties to the contract." *Brethren Mut. Ins. Co. v. Buckley*, 86 A.3d 665, 670 (Md. 2014). In *Brethern*, the court articulated this principle and then cited numerous examples from Maryland jurisprudence of courts applying releases in favor of nonparties to the contracts in which the releases appeared. For instance, *Brethren* cites with approval *Pemrock, Inc. v. Essco Co.*, 249 A.2d 711, 714 (Md. 1969), a case in which a release applied not only to the contracting parties but generically to "all other persons"—language that the court held barred a claim against any non-party. *Brethren*, 86 A.3d at 671. *Brethren* also cites approvingly *Peters v. Butler*, 251 A.2d 600, 601 (Md. 1969), a case in which a plaintiff was injured by a car accident, sued the relevant insurer, and then settled and released the insurer together with "all other persons, firms or corporations" who might be liable. *Peters*, 251 A.2d at 601. The plaintiff thereafter tried to sue a third party to the settlement, and the Court enforced the release, rejecting the "contention that because the [third party defendant] paid nothing for the release, and was not expressly named, it was not released from the [plaintiff]'s claim." *Brethren*, 86 A.3d at 671 (citing *Peters*, 251 A.2d at 602). *Brethren*, *Pemrock,* and *Peters* show

---

[6] Maryland law governs pursuant to the choice of law clause in the Separation Agreement. *See* NAMB Ex. 17 at BCMD_0636.

that, under Maryland law, the court enforces a release as written, even where it extends to non-signatories. Indeed, the releases that the courts enforced in *Pemrock* and *Peters* (*i.e.,* "all persons") were far more generic than the one at issue. If the releases in *Pemrock* and *Peters* were effective to release third parties, then the far more specific release in this case necessarily is as well.

Plaintiff's four cited cases are not to the contrary and are irrelevant. Mot. at 17-18. None concerns or even mentions a release. Rather, they all involve situations in which plaintiffs sued for breach of contract damages claiming to be third party beneficiaries of contracts.[7] NAMB, however, has not sued for damages to enforce the Separation Agreement—NAMB has not, for instance, sued Plaintiff for breach of contract damages asserting that he breached the covenant not to sue, *see* NAMB Ex. 17 at BCMD_0634. Rather, NAMB has asserted the *affirmative defense* of release pursuant to Rule 8(c)(1). And the Court in construing that affirmative defense applies the release according to its terms. *Brethren*, 86 A.3d at 670-71.[8]

Moreover, Plaintiff's erroneous construction of the law would yield absurd results that would invalidate releases in virtually every contract. Releases invariably include not only the contracting parties, but others such as officers, directors, affiliates, successors, spouses, estates, etc.—or, as in the caselaw cited above, even "all persons." None of those releases would be valid if Plaintiff were correct that releasees who do not actually sign the contract cannot receive the benefit of the release. If that radical view of the law were correct, surely Plaintiff could cite *at least one* case articulating it. Yet his Motion contains no such citation.

---

[7] *Allen v. Bank of Am., N.A.*, 933 F. Supp. 2d 716, 726 (D. Md. 2013) (finding plaintiffs could not assert claim for damages because they were not contractual third party beneficiaries); *CX Reinsurance Co., Ltd. v. Levitas*, 207 F. Supp. 3d 566, 570-71 (D. Md. 2016), *aff'd*, 691 F. App'x 130 (4th Cir. 2017) (same); *CR–RSC Tower I, LLC v. RSC Tower I, LLC*, 56 A.3d 170 (Md. 2012) (same); *Cushman & Wakefield of Maryland, Inc. v. DRV Greentec, LLC*, 203 A.3d 835, 838 (Md. 2019) (same).

[8] Plaintiff's position fares no better analyzing the Separation Agreement using third party beneficiary principles. Persons that are granted a release in an agreement are obviously intended beneficiaries. Otherwise, the release is pointless because the releasee cannot benefit from it.

Finally, unable to make a cogent legal argument, Plaintiff resorts to arguing irrelevant facts. Mot. at 18. He first argues that NAMB somehow cannot benefit from the release because it did not negotiate the Separation Agreement and did not even know its contents or have a copy of it for a period of time. *Id*. That is irrelevant—under controlling law, a release "must be read to release even claims against parties who gave no consideration for, had no knowledge of, and were not parties to the contract." *Brethren*, 86 A.3d at 670. Plaintiff then resorts to claiming that his lawyer supposedly told him the release would not cover NAMB. Mot. at 18. This too is irrelevant because releases are applied according to their objective terms, not the supposed secret understanding of client and counsel. *Ocean Petroleum, Co. v. Yanek*, 5 A.3d 683, 690 (Md. 2010).[9]

In sum, Plaintiff cannot use conflations of legal concepts and selective privilege waivers to muddle that which is simple. Plaintiff accepted a large cash sum and other benefits to release BCMD and its "supporting organizations." The Court needs only to interpret that term and decide whether it includes NAMB (which it does). If so, then under Maryland law the release is applied as written. Contentions about third party beneficiary status are irrelevant.

### C. NAMB Is a "Supporting Organization" Under the Separation Agreement

Finally, Plaintiff argues that NAMB is not a "supporting organization" under the Separation Agreement because NAMB does not meet the specialized definition of supporting organization under the IRC. Mot. at 14-17. NAMB already addressed this erroneous contention in its summary

---

[9] *See also* Dkt. Nos. 56, 57 (moving to strike attorney's declaration). Moreover, the argument is a flagrant privilege waiver. Thus, although NAMB believes the argument is irrelevant (because what matters is the objective content of the release not private conversations with counsel), if the Court believes Plaintiff's contention about what his lawyer told him is relevant to the outcome of summary judgment, then NAMB should be granted leave to take discovery concerning legal advice received by Plaintiff. Otherwise, a classic sword/shield situation is presented in which Plaintiff uses one narrow slice of privileged information to his advantage while shielding the rest. For instance, NAMB would be entitled to understand what facts Plaintiff provided to or withheld from counsel in eliciting that alleged legal advice, and what other advice he received on the topic.

judgment motion (*see* NAMB MSJ at 11-13) so, rather than repeat, NAMB incorporates that argument herein by reference, and briefly addresses points raised in Plaintiff's Motion.

As a threshold matter, Plaintiff's brief is remarkable not for what it states but for what it omits. Plaintiff goes to great lengths to prove the undisputed point that NAMB is not a supporting organization under the IRC, but cites *no evidence* that BCMD and Plaintiff in the Separation Agreement intended to adopt the specialized IRC meaning or even knew such definition existed at the time. In that regard, Plaintiff spends four pages (Mot. at 6-9) laying out facts that are the basis for Plaintiff's position but *none of them* asserts that the contracting parties intended to adopt (or were even aware of) the IRC definition of supporting organization for purposes of limiting the scope of the Separation Agreement's release. Thus, the IRC definition is irrelevant, since the Court must ascribe to the contract's language its "'customary, ordinary, and accepted meaning,'" not a technical tax law definition. *Ocean Petroleum*, 5 A.3d at 690 (internal citation omitted); *see also United States v. Hartford Accident & Indem. Co.*, 168 F. Supp. 3d 824, 833 (D. Md. 2016) ("A litigant seeking to avert the sting of an ill-conceived release agreement has an obvious incentive to argue that the parties never intended the release to encompass the claims at issue."); *Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, LLC*, 829 A.2d 540, 546 (Md. 2003). NAMB already showed that, under the ordinary meaning of the term, NAMB is a supporting organization of BCMD. *See* NAMB MSJ at 11-13.

*Second*, Plaintiff tries to distract by offering evidence that NAMB sometimes used the IRC definition of supporting organization in its internal email and financial reporting. Mot. at 6-9; *id.* at 16-17. However, the subjective understandings of even the contracting parties are irrelevant— courts interpreting contracts do not consider subjective intent but rather "what a reasonable person in the position of the parties would have thought it meant." *Ocean Petroleum*, 5 A.3d at 690 (internal quotation omitted). Moreover, NAMB's understanding of the meaning of supporting

12

organization is doubly irrelevant because NAMB was not even a contracting party to the Separation Agreement. Thus, even if there were proof conclusively that NAMB "believes" the term "supporting organization" always has the IRC definition (not the case), that would be irrelevant to what the term means as included in a contract that NAMB had no part in drafting or negotiating.

*Finally*, in seeking to distract with technical definitions, Plaintiff conspicuously fails to address the direct evidence that the contracting parties understood NAMB to be a supporting organization of BCMD. For instance, just months before executing the Separation Agreement, Plaintiff described "NAMB's role" as "providing support" to BCMD. NAMB Ex. 26 at NAMB 6612. Moreover, the SPA—to which BCMD was party—explicitly acknowledged "NAMB's support" of BCMD's "strategic plan." NAMB Ex. 1 at NAMB-0003; *see also id.* at NAMB-0004 (referring to NAMB as a "financially supporting partner[]" of BCMD). [10] And, both BCMD and President Warren have acknowledged that NAMB is a supporting organization and described this very case as "exactly the type of end-around that was foreclosed and released by Dr. McRaney's settlement agreement with BCMD." Dkt. No. 38 at 2; *see also* NAMB Ex. 3 at 153:18-154:2 (describing NAMB as a "supporting organization of BCMD.").

## Conclusion

Plaintiff accepted a large sum of money and other benefits in exchange for releasing his claims. The Separation Agreement was drafted to include supporting organizations to prevent an end run around the release—exactly what is occurring in this case. Plaintiff may "regret [his] decision to sign such a release—but the Court's task is to 'examine the agreement the parties did sign, not the agreement that one or the other now wishes they had negotiated instead.'" *Hartford Accident*, 168 F. Supp. 3d at 834 (quoting *Newell v. Johns Hopkins Univ.*, 79 A.3d 1009, 1023 (Md.

---

[10] As NAMB argued in the NAMB MSJ, Plaintiffs claims are also barred by the First Amendment because, as also demonstrated herein, they require the Court to interpret NAMB's strategic ministry support for BCMD under the SPA. *See* NAMB MSJ at 6-11.

Ct. App. 2013)). The Court should deny Plaintiff's motion for summary judgment and grant summary judgment in favor of NAMB.

Respectfully submitted, this 1st day of June, 2023.

> By: *s/ Kathleen Ingram Carrington*
> Kathleen Ingram Carrington (MB# 104220)
> BUTLER SNOW LLP
> 150 3rd Avenue South, Suite 1600
> Nashville, TN 37201
> (P) 615-651-6745
> kat.carrington@butlersnow.com
>
> *s/ Matthew T. Martens*
> Matthew T. Martens (admitted *pro hac vice*)
> WILMER CUTLER PICKERING
>  HALE & DORR LLP
> 2100 Pennsylvania Avenue, NW
> Washington, DC 20037
> (P) (202) 663-6921
> matthew.martens@wilmerhale.com
>
> *s/ Timothy Jeffrey Perla*
> Timothy Jeffrey Perla (admitted *pro hac vice*)
> WILMER CUTLER PICKERING
>  HALE & DORR LLP
> 60 State Street
> Boston, MA 02109
> (P) (617) 526-6696
> timothy.perla@wilmerhale.com
>
> *s/ Joshua Aisen Vittor*
> Joshua Aisen Vittor (admitted *pro hac vice*)
> WILMER CUTLER PICKERING
>  HALE & DORR LLP
> 350 South Grand Avenue
> Suite 2400
> Los Angeles, CA 90071
> (P) (213) 443-5375
> joshua.vittor@wilmerhale.com
>
> *Counsel for Defendant The North American Mission Board of the Southern Baptist Convention, Inc.*