**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**

Will McRaney,

        Plaintiff,

        v.

The North American Mission Board of the
Southern Baptist Convention, Inc.,

        Defendant.

Case No. 1:17-cv-00080-GHD-DAS

**PLAINTIFF'S RULE 56(c) OBJECTIONS AND RESPONSES**
**TO NAMB'S "UNDISPUTED FACTS" IN ITS MOTION FOR SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56(c)(1)(B) provides: "A party asserting that a fact … is genuinely disputed must support the assertion by … showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Federal Rule of Civil Procedure 56(c)(2) provides: "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."

Pursuant to Federal Rules of Civil Procedure 56(c)(1)(B) and 56(c)(2), Plaintiff sets forth below his responses and objections to purported "undisputed facts" contained in NAMB's memorandum in support of its motion for summary judgment. *See* Doc. 264.

## OBJECTIONS AND RESPONSES[1]

1.      <u>NAMB Statement</u>:  In 2012, NAMB and BCMD executed a Strategic Partnership Agreement ("SPA"), a joint ministry agreement that "define[d] the relationships and responsibilities of [BCMD and NAMB] in areas where the two partners jointly develop, administer and evaluate a strategic plan for  penetrating lostness through church planting and evangelism." Ex. 1 at NAMB-0003.

---

[1]   Additional evidence precluding the entry of summary judgment for NAMB is set forth in Plaintiffs' Memorandum in Opposition to NAMB's Motion for Summary Judgment, in the Exhibits to the June 1, 2023 Declaration of Scott E. Gant, and in the Exhibits to May 18, 2023 Declaration of Scott E. Gant (Doc. 265-1).  All of that evidence is incorporated into these Objections and Responses.

Plaintiff:

- NAMB claims without support that the SPA is "a joint ministry agreement." The SPA itself does not use that language, and NAMB cited no record support for this undefined term.

- NAMB's then-Executive Vice President and Chief Financial Officer, Carlos Ferrer, testified at his deposition that the SPA is "a contractual agreement." Ferrer Tr. 108:19).

2.     NAMB Statement: The SPA is an inherently religious agreement: it invokes the Baptist Faith and Message (the "BFM"), the SBC's fundamental doctrinal statement, *see id.* at NAMB-0004; to interpret the SPA requires an understanding of the BFM. *See* Ex. 3 at 66:4-17.

Plaintiff:

- NAMB claims without explanation or support that the SPA is an "inherently religious" agreement. The fact the SPA mentions the BFM does not make the Agreement "inherently religious."

- NAMB claims that "to interpret the SPA requires an understanding of the BFM." The sole support for NAMB's claim is deposition testimony from an individual, Bill Warren, who did not write or sign the SPA. Moreover, Mr. Warren's answer cited by NAMB was in response to a question objected to at the deposition, and is inadmissible for the reasons stated on the record. Doc. 263-4 (Warren Tr. 66: 8-10). And Mr. Warren clearly stated he was only offering his own personal view, and testified that one "could understand" the SPA without knowing the BFM. (Tr. 66:4-17).

- NAMB's then-Executive Vice President and Chief Financial Officer, Carlos Ferrer, testified at his deposition that the SPA is "a contractual agreement." Ferrer Tr. 108:19.

3.    <u>NAMB Statement</u>:  Plaintiff and NAMB disagreed about how to achieve the parties' religious objectives in connection with the SPA.

<u>Plaintiff</u>:

- NAMB's statement is unsupported by any record citations.

- NAMB's claim that Dr. McRaney and NAMB had religious disagreements is false.

- NAMB's false statement of fact that Dr. McRaney "breached" the SPA was not a religious dispute.  *See* BLACK'S LAW DICTIONARY 232 (11th ed. 2019) (Breach: "A violation or infraction of a law, obligation or agreement, esp. of an official duty or legal obligation, whether by neglect, refusal, resistance, or inaction.").

4.    <u>NAMB Statement</u>:  Often, Plaintiff would act unliterally, without consulting NAMB, which was inconsistent with SPA provisions, including the core dictates that the partnership "shall be driven by shared values that reflect mutual respect" (*id.*, SPA § I.2) and be implemented "in accordance with all the policies and procedures of each partner (*id.*, SPA § I.6).

<u>Plaintiff</u>:

- NAMB's statement that Plaintiff would act unliterally, without consulting NAMB is both unsupported and false.

- BCMD conducted "a careful and thorough exploration of [NAMB's claims against [Dr. McRaney] in regards to the [SPA]" and told NAMB "we are confident that our Executive Director and our Network have not breached the agreement."  BCMD went on to add that NAMB's "false accusations" against Dr. McRaney were "unfounded and highly inflammatory."  NAMB 010664.

- In February 2015, BCMD's outside law firm (which represents both it and Mr. Warren in connection with this litigation) conducted a review of NAMB's allegation that Dr.

3

McRaney had breached the SPA, and concluded there had been no breach, "either technically or of the spirit of the agreement." Warren Tr. 274:13-277:18.

5.    NAMB Statement:  [O]n June 25, 2014, Plaintiff informed NAMB Vice President Jeff Christopherson that he had unilaterally offered a missionary position to Joel Rainey without first consulting NAMB. *See* Ex. 5 at NAMB 6744.

Plaintiff:

- NAMB's claim that Dr. McRaney "unilaterally offered a missionary position to Joel Rainey without first consulting NAMB" is false.

- NAMB's sole purported support for its claims is NAMB 6744.  That document, authored by a NAMB employee, does not establish the truth of NAMB's assertion about Plaintiff's conduct.  The document is inadmissible under Federal Rules of Evidence 401 and 403, and as hearsay to which no exception applies.

- Dr. McRaney consulted with NAMB in connection with Rainey.  *See*, *e.g.*, NAMB 6120 (June 21, 2014 email from Dr. McRaney to NAMB's Jeff Christopherson, stating: "I would like to schedule time to talk with you by phone," and listing among the topics: "Staffing possible change around Joel Rainey, considering him for SDOE position").

- Further demonstrating that Dr. McRaney did not act "unilaterally," and Dr. McRaney and NAMB were collaborating about the potential hire is a July 15, 2014 email from NAMB's Jeff Christopherson, stating: "Will McRaney would like to move Joel Rainey from a Church Planting Catalyst position within BCMD to become their SDOE . . .  I would wholeheartedly endorse Joel . . . ."  NAMB 6141.

- NAMB admitted it does not know what Dr. McRaney told Rainey about NAMB's role in the approval process.  Ezell Tr. 197:2-198:14.

4

6.      <u>NAMB Statement</u>:  Plaintiff did it again in November 2014, offering a jointly-funded State Director of Missions position to Michael Crawford, again without consulting NAMB.

<u>Plaintiff</u>:

- NAMB's claim that Dr. McRaney hired Michael Crawford as State Director of Missions position "without consulting NAMB" is unsupported and false.

- Evidence of coordination and consultation in the hiring includes a December 3, 2014 email from Dr. McRaney to NAMB's Jeff Christopherson, following up about their discussion of Crawford's candidacy, and describing actions to "give you ample time to consider him and engage him in whatever ways are consistent with NAMB's approval process."  BCMD 1552.

- Minutes from BCMD's Board meeting discuss the status of NAMB's candidacy, noting that hiring requires "NAMB's final approval."  WM00842.

- NAMB admitted it does not know what Dr. McRaney told Crawford about NAMB's role in the approval process.  Ezell Tr. 197:2-198:14.

7.      <u>NAMB Statement</u>:  Plaintiff made the unilateral decision to impose associational giving and work requirements on NAMB-funded church planters, which was also inconsistent with the SPA.  *See* Ex. 7 at NAMB 6214-15 (noting that a "general associational giving requirement is not something [NAMB] can partner in" and a work requirement "would not be aligned with the spirit with which we agree to jointly fund a missionary").

Plaintiff:

- NAMB's claim that Dr. McRaney "made the unilateral decision to impose associational giving and work requirements on NAMB-funded church planters" is false.

- NAMB's sole purported support for its claims is NAMB 6214-15. That document, authored by a NAMB employee, does not establish the truth of NAMB's assertion about Plaintiff's conduct. The document is inadmissible under Federal Rules of Evidence 401 and 403, and as hearsay to which no exception applies.

- NAMB 6214 refers to an "agreement" which it does not identify—and additional reason it is inadmissible under Federal Rules of Evidence 401 and 403, and as hearsay to which no exception applies.

    8.    NAMB Statement:  NAMB discussed its concerns with the giving requirement at length with Plaintiff, who initially agreed to remove it from the BCMD Church Planter's Covenant only to direct later that it be added back in. *See* Ex. 5 at NAMB 6745.

Plaintiff:

- NAMB's sole purported support for its claim is NAMB 6745. That document, authored by a NAMB employee, does not establish the truth of NAMB's assertion about Plaintiff's conduct. The document is inadmissible under Federal Rules of Evidence 401 and 403, and as hearsay to which no exception applies.

    9.    NAMB Statement:  On November 20, 2014, NAMB's President sent Plaintiff an email underscoring the seriousness of Plaintiff's conduct and outlining the three major areas that NAMB believed Plaintiff had "disregarded": "Local Disregard for NAMB staff," "Disregarding NAMB's processes," and "Adding Percentages Fees to [Church] Planters."  Ex. 9 at NAMB

6

6568.  This contravened the doctrine of voluntary cooperation, a central tenet among autonomous Baptist organizations, and a cornerstone of the SPA.  *See* Ex. 3 at 59:11-16.

Plaintiff:

- NAMB did send such a letter but the allegations by NAMB were false, as detailed elsewhere in the filings opposing NAMB's motion for summary judgment.

- BCMD conducted "a careful and thorough exploration of [NAMB's claims against [Dr. McRaney] in regards to the [SPA]" and told NAMB "we are confident that our Executive Director and our Network have not breached the agreement."  BCMD went on to add that NAMB's "false accusations" against Dr. McRaney were "unfounded and highly inflammatory."  NAMB 010664.

- In February 2015, BCMD's outside law firm (which represents both it and Mr. Warren in connection with this litigation) conducted a review of NAMB's allegation that Dr. McRaney had breached the SPA, and concluded there had been no breach, "either technically or of the spirit of the agreement."  Warren Tr. 274:13-277:18.  The same month, BCMD's General Mission Board unanimously voted for a resolution of support of Dr. McRaney.  WM00846.

- NAMB 6568, authored by a NAMB employee, does not establish the truth of NAMB's assertion about Plaintiff's conduct.  The document is inadmissible under Federal Rules of Evidence 401 and 403, and as hearsay to which no exception applies.

- NAMB's reference to Ex. 3 at 59:11-16 is deposition testimony of Bill Warren.  Mr. Warren's cited testimony reflects only his own view, and cannot establish NAMB's purported "facts."

- Mr. Warren's answer cited by NAMB was in response to questions objected to at the deposition and is inadmissible for the reasons stated on the record, and under Federal Rules of Evidence 401 and 403, and as hearsay to which no exception applies.

10. <u>NAMB Statement</u>: As William Warren, President of BCMD, explained, this was ultimately a dispute between members of the body of Christ (a term for the Christian church) about how to carry out a religious mission. *See id.* at 99:18-100:14.

<u>Plaintiff</u>:

- NAMB mischaracterizes Mr. Warren's deposition testimony—which may explain why NAMB does not actually quote it.

- Mr. Warren's cited testimony is only his own personal characterization of a dispute between Dr. McRaney and Kevin Ezell, and cannot establish NAMB's purported "fact."

- Mr. Warren's answer cited by NAMB was in response to questions objected to at the deposition and is inadmissible for the reasons stated on the record. Warren Tr. 100:1, 12-13.

- Mr. Warren's answer cited by NAMB is inadmissible under Federal Rules of Evidence 401 and 403.

- NAMB refers to "the Christian Church"—without explanation or a record citation. This appears to be yet another effort by NAMB to distort the record in an effort to conform the facts to inapplicable decisional law. *See* accompanying Memorandum; Doc. 133 (expert report of Dr. Barry Hankins). Earlier in this case, NAMB withdrew a filing in which it used the term "the Southern Baptist Church" (Doc. 171 at 10 n.1)—which does not exist—following public criticism. *See* Doc. 179 (correcting error).

8

11.    <u>NAMB Statement</u>:  As BCMD President Warren explained, Plaintiff's lack of a "humble spirit," an element of Christ-like character, was the primary reason for his termination. *See* Ex. 3 at 79:7-82:3, 110:5-16, 378:11-379:4.

<u>Plaintiff</u>:

- Mr. Warren's answer cited by NAMB was in response to questions objected to at the deposition and is inadmissible for the reasons stated on the record.  Warren Tr. 79:19; 110:8-10; 378: 14-15, 19.

- Mr. Warren's cited testimony reflects only his own view, and cannot establish NAMB's purported "fact."  Mr. Warren was not testifying on behalf of the BCMD.  Warren Tr. 229:16-230:21.

  Mr. Warren testified that he was only one vote among many members of the BCMD General Mission Board which terminated Dr. McRaney, and that he does not know other people's reasons for their votes.  Warren Tr. 101:9-16.

- Mr. Warren's answer cited by NAMB is inadmissible under Federal Rules of Evidence 401 and 403, and as hearsay to which no exception applies.

- Two witnesses have provided sworn testimony contradicting NAMB's account, and supporting Dr. McRaney's allegation that his termination was significantly influenced by NAMB's financial threats and inducements.  *See* Declaration of Clint Scott at ¶ 5 (reporting firsthand on a meeting with BCMD leaders, during which it was admitted that "Kevin Ezell and the withholding of funds was a significant factor for Will McRaney's termination"); Declaration of Steve Wolverton at ¶ 8-10 ("Dr. [Bill] Warren stated that Dr. Ezell had convinced him that NAMB was going to withhold funding from BCMD for as long as Dr. McRaney remained Executive Director.  Dr. Warren said that he had

9

relayed this information to BCMD's General Mission Board and that the organization would lose funding, and thus resources and staff, if Dr. McRaney remained in his position. After hearing this, the Board voted to terminate Dr. McRaney."); NAMB 7638 (Wolverton: "[Bill Warren told me that he did not feel he could risk losing the funding" from NAMB "so he did what he felt like he had to do"); *see also* Barker Declaration ¶ 12 ("From personal experience and knowledge, I know that Kevin Ezell has used NAMB's funding and resources to control state conventions.").

12.    <u>NAMB Statement</u>:  But as President Warren wrote to a colleague, the "bottom line" is that BCMD "fired Will because of his wretched leadership not because of a possible loss of NAMB funds."  Ex. 14 at WARR 041; *see also* Ex. 3 at 82:5-86:19 (Warren Dep.) (testifying repeatedly that NAMB's influence was not the cause of Plaintiff's termination); Ex. 15 at NAMB 7363 ("Kevin Ezell never implied or stated to me a threat that NAMB would eliminate or reduce their funding to [BCMD] if you were not removed as the Executive Director."); Ex. 16 at NAMB 5380 ("But categorically I can say Kevin Ezell never bullied us or badgered us or asked us to fire Will McRaney.").

<u>Plaintiff</u>:

- Mr. Warren's answer cited by NAMB was in response to questions objected to at the deposition and is inadmissible for the reasons stated on the record.  Warren Tr. 82:11-12; 86: 17-18.

- Mr. Warren's cited testimony reflects only his own view, and cannot establish NAMB's purported "fact."

10

Mr. Warren testified that he was only one vote among many members of the BCMD General Mission Board which terminated Dr. McRaney, and that he does not know other people's reasons for their votes. Warren Tr. 101:9-16.

- Mr. Warren's answer cited by NAMB is inadmissible under Federal Rules of Evidence 401 and 403.

13. <u>NAMB Statement</u>: Plaintiff's fixation on NAMB and Dr. Ezell prompted NAMB to take unprecedented steps to ensure physical security.

<u>Plaintiff</u>:

- No NAMB witnesses were able to identify any facts supporting the notion that Dr. McRaney posed a danger. *See*, *e.g.*, De Armas Dep. Tr. 41:16-19 (Never threatened anyone with physical harm in presence); Wood Tr. 121:6-17 (not aware of physical threats against anyone at NAMB); Wood Tr. 122:9-16 (not aware of any reason for anyone to fear for their safety having Dr. McRaney at NAMB's headquarters); Davis Tr. 84:23-86:4 (no threats or fear for physical safety). And the NAMB employee responsible for posting the photo testified at his deposition that the photo was *not* posted "out of concern about security or a risk of violence posed by Dr. McRaney." Wigginton Tr. 76:25-77:4.

- Only Kevin Ezell suggested he "felt that it was a possibility" that Dr. McRaney might pose a physical threat, but he was unable at his deposition to identify "an actual threat that Dr. McRaney made to [his] physical well-being." Ezell Tr. 97:10-98:2.

14. <u>NAMB Statement</u>: Plaintiff also falsely asserts that he was uninvited to speak at a church event in October 2016 due to "interference" by NAMB. Supp. ¶ 28. But the undisputed evidence—including the testimony of the event organizer and his real time correspondence with

Plaintiff—proves that NAMB had nothing to do with it.  *See* Ex. 21 at 51:19-52:21, 58:8-9, 75:18-77:6; *see also* Ex. 22.

    <u>Plaintiff</u>:

- There is a genuine factual dispute about the reasons Dr. McRaney was disinvited to speak at that event.

- Plaintiff was uninvited to speak at the event after Rob Paul—who had extended the invitation to Plaintiff—had a phone call with then-NAMB Board of Trustees member, Danny Wood, during which Wood told Paul that it "makes sense" for Paul to uninvite Plaintiff.  Wood made this statement to Paul approximately one month after Wood declared in an email to NAMB's President, Kevin Ezell, that Wood was ready to "go to battle" with Ezell against Plaintiff.  Wood-000001.  Dr. McRaney later learned that Paul had replaced him with Ed Litton (who became the SBC President), the husband of NAMB employee Kathy Ferguson Litton.  Paul Dep. Tr. 135:2-20.

15.   <u>NAMB Statement</u>:  Plaintiff stated in writing that "NAMB's role" was to "provid[e] support" to BCMD. Ex. 26 at NAMB 6612.

    <u>Plaintiff</u>:

- Plaintiff does not dispute using the word "providing support" in NAMB 6612, but it is irrelevant, and inadmissible under Federal Rule of Evidence 401 with respect to whether NAMB was a "supporting organization" of BCMD.  Dr. McRaney did not use the term "supporting organization" in that document, let alone use it to describe NAMB's relationship to BCMD.

- Prior to execution of the Separation Agreement, Dr. McRaney's attorney, R. David (David) de Armas, "confirmed that BCMD annually sent substantially more money to [NAMB]

than the NAMB sent to BCMD," and concluded "it was obvious that NAMB was not a supporting organization of the BCMD." Doc. 265-8.

- Before executing the Separation Agreement, Dr. McRaney specifically asked his attorney, David de Armas, whether the Separation Agreement "would preclude claims against NAMB." David de Armas advised Dr. McRaney that signing the Separation Agreement would not preclude claims by him against NAMB. Doc. 265-8.

16. NAMB Statement: "BCMD did so too. *See* Dkt. No. 38 at 2 ('Dr. McRaney has brought suit instead against one of the Convention's *primary supporting organizations*. This action is exactly the type of end-around that was foreclosed and released by Dr. McRaney's settlement agreement with BCMD.') (emphasis added)." Doc. 264 at 11.

Plaintiff:

- NAMB cites a motion filed by BCMD using the term "supporting organization," but that motion is not admissible evidence, and cannot support NAMB's purported "fact."

- BCMD's motion is inadmissible under Federal Rules of Evidence 401 and 403, and is hearsay to which no exception applies.

17. NAMB Statement: BCMD President Warren testified that NAMB was a "supporting organization of BCMD." Ex. 3 at 153:18-154:2.

Plaintiff:

- The testimony from Mr. Warren cited by NAMB was in response to a question objected to at the deposition, and is inadmissible for the reasons stated on the record. Warren Tr. 153: 20-154:1.

- NAMB's citation is also misleading. Later in the deposition Mr. Warren testified he does not know what "supporting organization" means. Warren Tr. 233:3-11; 269:4-8. Mr.

13

Warren then explained that: "if the definition of a supporting organization means that they give us [BCMD] more money than we give them, then – then they're [NAMB] *not* a supporting organization . . . ."  Warren Tr. 271:3-7 (emphasis added).

- Mr. Warren's answer cited by NAMB is inadmissible under Federal Rules of Evidence 401 and 403, and as hearsay to which no exception applies.

18.  <u>NAMB Statement</u>:  The SPA explicitly acknowledges "NAMB's support" of the "strategic plan of [BCMD]." Ex. 1 at NAMB-0003; *see also id.* at NAMB-0004 (referring to NAMB as a "financially supporting partner[]" of BCMD).

<u>Plaintiff</u>:

- Plaintiff does not dispute the accuracy of the quoted language in the SPA, but that language is irrelevant, and inadmissible under Federal Rule of Evidence 401 with respect to whether NAMB was a "supporting organization" of BCMD.

19.  <u>NAMB Statement</u>:  Plaintiff's own expert, who initially opined, without support, that "NAMB is not a 'supporting organization' of BCMD," Dkt. No. 133 at 13, testified at his deposition that he understood the SPA's reference to "supporting partner[s]" to refer to "NAMB and BCMD." Ex. 24 at 235:17-236:1.

<u>Plaintiff</u>:

- The specific deposition testimony from Dr. Hankins cited by NAMB was in response to a question objected to at the deposition, and is inadmissible for the reasons stated on the record.  Hankins Tr. 235:20-21.

- That specific deposition testimony is also irrelevant, and inadmissible under Federal Rule of Evidence 401 and 403 with respect to whether NAMB was a "supporting organization" of BCMD.  Dr. Hankins did not testify in his report, or at his deposition, that NAMB is a

supporting organization of BCMD. To the contrary, Dr. Hankins explained his opinion why, as a scholar and observer of Southern Baptist entities and organizations, he concluded that NAMB's purported interpretation of the term "supporting organization" in the Separation Agreement is wrong. *See* Doc. 133-1 (Expert Report of Barry Hankins at p. 13-14).

June 1, 2023

Respectfully Submitted,

*William Harvey Barton*

William Harvey Barton, II
BARTON LAW FIRM, PLLC
3007 Magnolia Street
Pascagoula, MS 39567
Phone: (228) 769-2070
harvey@wbartonlaw.com

*Scott E. Gant*

Scott E. Gant
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Phone: (202) 237-2727
sgant@bsfllp.com