**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**WILL McRANEY**                                                                                      **PLAINTIFF**

**v.**                                                               **No. 1:17cv080-GHD-DAS**

**THE NORTH AMERICAN MISSION BOARD**
**OF THE SOUTHERN BAPTIST CONVENTION, INC.**             **DEFENDANT**

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION**
***IN LIMINE* NO. 3 TO EXCLUDE DECLARATIONS PRODUCED**
**BY PLAINTIFF**

## Introduction

Defendant The North American Mission Board ("NAMB") respectfully moves the Court *in limine* to preclude Plaintiff from admitting or otherwise introducing at trial certain written declarations that Plaintiff Will McRaney procured and produced during discovery. These declarations are paradigmatic hearsay, and they are also irrelevant to any of the claims or defenses in this case. They are therefore inadmissible pursuant to Federal Rules of Evidence 801, 802, 401, and 403, and should be excluded.[1]

## Background

In this action, Plaintiff alleges that NAMB defamed him and caused him to be terminated from his employment as Executive Director of the Baptist Convention of Maryland/Delaware ("BCMD"). During discovery, Plaintiff produced copies of nine declarations (collectively, the "Declarations"), which are attached hereto as Exhibits 1-9. They purport to be declarations of the following individuals:

1. R. David de Armas, Plaintiff's former counsel during his termination process from BCMD. Mr. de Armas's Affidavit states that Mr. de Armas advised Plaintiff that he could execute the Separation Agreement and Release with BCMD and still maintain his claims against NAMB. *See* Affidavit of R. David de Armas ("de Armas Aff."), Ex. 1 at WM00048–WM00049.

2. Scott Thomas, former president of Safari Christian Business Alliance ("SCBA"). Mr. Thomas's Affidavit states that SCBA leadership decided not to hire Plaintiff because SCBA could not afford to upset some Southern Baptist leaders and pastors. *See* Affidavit of Scott Thomas ("Thomas Aff."), Ex. 2 at WM00323–WM00324.

3. Jimmy Crosby, the president of Jacksonville Baptist Theological Seminary ("JBTS"). Mr. Crosby's Affidavit states that he decided not to hire Plaintiff because he feared

---

[1] By filing this motion *in limine*, NAMB neither waives nor abandons its motion for summary judgment or any of the arguments it advanced therein. *See* Dkt. Nos. 263, 264. For the reasons explained in that motion, NAMB is entitled to summary judgment on all of Plaintiff's claims. *See generally* 264. This motion *in limine* is filed solely to preserve NAMB's rights in the event the Court determines a trial is necessary on any of Plaintiff's claims.

1

doing so would cause damage to JBTS, based on hearing from Southern Baptist Convention leaders that NAMB leadership was not pleased with Plaintiff. *See* Affidavit of Jimmy Crosby ("Crosby Aff."), Ex. 3 at WM00966.

4. Rick Wheeler, a former employee of the Jacksonville Baptist Association in Jacksonville, Florida. Mr. Wheeler's Declaration states that he saw a picture of Plaintiff posted at the receptionist desk of NAMB's offices in August 2016. *See* Declaration of Rick Wheeler ("Wheeler Decl."), Ex. 4 at WM006168–WM006169.

5. Joel Breidenbaugh, a pastor in Florida who had invited Plaintiff to speak at the 2016 Florida Baptist Pastors' Conference. Mr. Breidenbaugh's Declaration states that he was told by Jimmy Scroggins that NAMB President Kevin Ezell had asked Mr. Scroggins to rescind the invitation to Plaintiff and that, despite that information, Plaintiff did speak at the Conference in November 2016. *See* Declaration of Joel Breidenbaugh ("Breidenbaugh Decl."), Ex. 5 at WM06177–WM06178.

6. Steve Wolverton, a pastor in Baltimore, Maryland. Mr. Wolverton's Declaration states that he was told by BCMD President Bill Warren that Dr. Warren was convinced that NAMB would withhold funding from BCMD for as long as Plaintiff remained Executive Director. *See* Declaration of Steve Wolverton ("Wolverton Decl."), Ex. 6 at WM06179–WM06180.

7. Clint Scott, a pastor in North Carolina. Mr. Scott's Declaration states that he was in a meeting with BCMD leaders on June 29, 2015 and that participants in that meeting agreed that NAMB's withholding of funds was a significant reason for Plaintiff's termination. *See* Declaration of Clint Scott ("Scott Decl."), Ex. 7 at WM06207.

8. Bill Barker, a former NAMB employee. Mr. Barker's Declaration describes his termination from NAMB as well as multiple occasions where Mr. Barker had personal interactions with Kevin Ezell. This Declaration also recites some statements about Dr. Ezell

2

made by other people to Mr. Barker. *See* Declaration of Bill Barker ("Barker Decl."), Ex. 8 at WM06209–WM06211. As Mr. Barker confirmed in his deposition, nothing in his declaration has anything to do with Plaintiff or his termination from BCMD. *See, e.g.*, Bill Barker Deposition Transcript ("Barker Tr."), Ex. 8A at 15:11-16:10; 18:5-19:4; 70:16-114:7.[2]

9. Joni B. Hannigan, a journalist in Florida. Ms. Hannigan's declaration describes multiple interactions that she had with some NAMB employees and articles that she had published about NAMB. *See* February 27, 2023 Declaration of Joni B. Hannigan, Ex. 9 at WM06221–WM06225.

## Argument

### I. The Declarations Are Inadmissible Hearsay Evidence

Hearsay is a statement that "the declarant does not make while testifying at the current trial or hearing," offered in evidence to "prove the truth of the matter asserted." Fed. R. Evid. 801; *Park v. Huff*, 493 F.2d 923, 927 (5th Cir. 1974). Absent an exception, hearsay is inadmissible. Fed. R. Evid. 802. Consistent with these standards, the law is clear that out-of-court written declarations are not admissible at trial; instead, the declarant must testify live and be subject to cross examination. *See Jones v. Williams Sonoma, Inc.*, 2005 U.S. Dist. LEXIS 40553, at *22-23 (N.D. Miss. Dec. 5, 2005).

The Declarations are inadmissible hearsay. They are statements by the declarants outside of any trial or hearing, and Plaintiff seeks to offer them to prove the truth of the matters stated in them. None of the hearsay exceptions apply to these Declarations either. Since Defendant will not have an opportunity to cross-examine any of the declarants unless they are called at trial, these Declarations should be excluded. *See Jones*, 2005 U.S. Dist. LEXIS 40553, at *24 (granting motion *in limine* to exclude declarations because "defendant is correct that plaintiff may not use [declarations] as substantive evidence in lieu of actual testimony at trial.").

---

[2] NAMB has separately filed a motion *in limine* to exclude *all* evidence and testimony relating to Mr. Barker, including, but not limited to, Mr. Barker's declaration. *See* NAMB's Motion *in Limine* No. 2.

3

Furthermore, some of the Declarations contain hearsay within hearsay. *See* Fed. R. Evid. 805; *Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 280 (5th Cir. 1991). For example, the Breidenbaugh Declaration is based not on Mr. Breidenbaugh's own experience, but rather on statements made by Jimmy Scroggins in a phone call with Mr. Breidenbaugh. *See* Breidenbaugh Decl. ¶ 9, Ex. 5 at WM06178. Similarly, Mr. Barker's Declaration contains various statements made by other people (Barker Decl. ¶¶ 6-12, Ex. 8 at WM06210–06211). The existence of multiple layers of hearsay further underscores the inadmissibility of the Declarations. *See Rock*, 922 F.2d at 280.

Finally, during meet and confer efforts, Plaintiff asserted that the Declarations could be relevant to impeach a witness other than the declarant who is testifying at trial. But there is no hearsay exception that would allow admission of the Declarations even in that circumstance. Instead, the proper result is simple. The Court should exclude the Declarations. If Plaintiff wishes to call the declarants as live witnesses to impeach a trial witness, he can seek to do so, subject to any objections by the NAMB and the Court's rulings.[3]

## II.     The Declarations Are Irrelevant

The Declarations are also inadmissible at trial because they are irrelevant and their probative value, if any, would be substantially outweighed by other considerations. Relevant evidence has a "tendency to make a fact more or less probable than it would be without the evidence" and must be "of consequence in determining the action." Fed. R. Evid. 401. The Court may also exclude evidence even if it is relevant, if its probative value is substantially outweighed by a danger of unfair prejudice, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403; *Harkness v. Bauhaus U.S.A., Inc.*, 2015 U.S. Dist. LEXIS 17926, at *8 (N.D. Miss. Feb. 13, 2015).

Here, the Declarations should be excluded because they are largely irrelevant to any of

---

[3] In that regard, NAMB has separately moved *in limine* to exclude testimony of Bill Barker. NAMB filed this motion because Plaintiff indicated a possibility of calling him at trial, and because he has nothing relevant to offer.

Plaintiff's claims. To the extent some of them contain facts that have any probative value, they offer nothing more than cumulative evidence. None of the produced declarations has any bearing on any facts at issue, as they only offer subjective beliefs of the declarants.

While Mr. de Armas may have advised his client that he believed that Plaintiff would not be releasing his claims by signing the Separation Agreement, this has no bearing on how that agreement should be interpreted as a matter of law. Mr. de Armas was not disclosed as an expert witness; his opinion about the contract is irrelevant.

Mr. Thomas's and Mr. Crosby's affidavits state that they did not hire Plaintiff in fear of damage to their organizations without offering any evidence that NAMB ever had any communication with them. Their statements therefore have no bearing on whether NAMB caused Plaintiff harm.

The only evidence offered in Mr. Wheeler's Declaration is the statement that Mr. Wheeler saw a photo of Plaintiff posted at a reception desk at NAMB's offices. NAMB has never disputed the existence of the photo; whether Mr. Wheeler saw it has no bearing on any facts in dispute in this case.

Mr. Breidenbaugh's Declaration does not offer any probative value. As the Declaration indicates, Plaintiff did ultimately speak at the conference in question. Therefore, this evidence does not have any tendency to make that Plaintiff's claim—that NAMB caused him losing speaking engagements—more probable. Indeed, Plaintiff's claim regarding this speaking engagement was dismissed by this Court years ago. Doc. No. 19 at 11-12.

Similarly, Mr. Wolverton's and Mr. Scott's Declarations do not have bearing on any facts at issue in this case. Both offer statements allegedly made by Bill Warren that Dr. Warren thought NAMB would withhold funding from BCMD for as long as Plaintiff remained Executive Director. Even if all these statements conform with exceptions to the hearsay rule—which they do not— they do not have any probative value. Dr. Warren's subjective belief, which is nothing more than

5

speculation about whether NAMB would withhold funding from BCMD—something NAMB was well within its rights to do under the terms of its partnership with BCMD—has nothing whatsoever to do with whether NAMB caused BCMD to terminate Plaintiff's employment. Indeed, Dr. Warren testified specifically that that was not why BCMD terminated Plaintiff. *See* William Warren Deposition Transcript, Doc. No. 263-4 at 82:4-14; 86:4-19.

Mr. Barker's Declaration does not contain any relevant evidence, as none of the incidents or statements in it concerns Plaintiff or Plaintiff's employment. In fact, Mr. Barker himself admitted during his deposition that he does not have personal knowledge of anything relevant to Plaintiff's claims. *See, e.g.*, Barker Tr., Ex. 8A at 15:11-16:10; 18:5-19:4. Additionally, as explained in NAMB's Motion *in Limine* No. 2, Mr. Barker's Declaration only offers inadmissible character evidence under the Federal Rule of Evidence 404 and is highly prejudicial.

Ms. Hannigan's Declaration contains no relevant evidence either. It is comprised only of Ms. Hannigan's personal experiences that have nothing to do with Plaintiff or any claims in this case. As Ms. Hannigan admitted in her subsequent declaration, she has no personal knowledge of anything relevant to Plaintiff's claims. *See* April 10, 2023 Declaration of Joni B. Hannigan, Ex. 10.

Finally, introducing any of these out-of-court declarations at trial will cause unfair prejudice to NAMB, who will not have an opportunity to cross-examine the declarants. Fed. R. Evid. 403.

In sum, the Declarations are inadmissible both because they are hearsay and because they are irrelevant and unduly prejudicial.

## Conclusion

For the foregoing reasons, the Court should exclude the Declarations.

Respectfully submitted, this 28th day of July, 2023.

> By: *s/ Kathleen Ingram Carrington*
> Kathleen Ingram Carrington (MB# 104220)
> BUTLER SNOW LLP
> 150 3rd Avenue South, Suite 1600
> Nashville, TN 37201
> (P) 615-651-6745
> kat.carrington@butlersnow.com
>
> *s/ Matthew T. Martens*
> Matthew T. Martens (admitted *pro hac vice*)
> WILMER CUTLER PICKERING
>  HALE & DORR LLP
> 2100 Pennsylvania Avenue, NW
> Washington, DC 20037
> (P) (202) 663-6921
> matthew.martens@wilmerhale.com
>
> *s/ Timothy Jeffrey Perla*
> Timothy Jeffrey Perla (admitted *pro hac vice*)
> WILMER CUTLER PICKERING
>  HALE & DORR LLP
> 60 State Street
> Boston, MA 02109
> (P) (617) 526-6696
> timothy.perla@wilmerhale.com
>
> *s/ Joshua Aisen Vittor*
> Joshua Aisen Vittor (admitted *pro hac vice*)
> WILMER CUTLER PICKERING
>  HALE & DORR LLP
> 350 South Grand Avenue
> Suite 2400
> Los Angeles, CA 90071
> (P) (213) 443-5375
> joshua.vittor@wilmerhale.com
>
> *Counsel for Defendant The North American Mission Board of the Southern Baptist Convention, Inc.*