UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| Will McRaney,<br><br>Plaintiff,<br><br>v.<br><br>The North American Mission Board of the Southern Baptist Convention, Inc.,<br><br>Defendant. | Case No. 1:17-cv-00080-GHD-DAS |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE**

Plaintiff Will McRaney ("Plaintiff") submits this memorandum in opposition to Defendant North American Mission Board of the Southern Baptist Convention, Inc.'s ("Defendant" or "NAMB") three motions *in limine*.

**I.     NAMB's Complicity with the ERLC's Misstatements to the Fifth Circuit is Admissible Intrinsic Evidence of Plaintiff's Claims**

NAMB's first motion *in limine* seeks to exclude evidence relating to misrepresentations made to the Fifth Circuit in an amicus brief filed by the Ethics and Religious Liberty Commission ("ERLC"). NAMB's argument fails because this is intrinsic evidence that is capable of proving elements of Plaintiff's claims. *See* Doc. 191, at ¶ 37 (allegations regarding ERLC in Plaintiff's Supplemental Pleading).

1

A. **The ERLC Amicus Brief Background**

As explained in Plaintiff's opposition to NAMB's motion for summary judgment (Doc. 273, at 7-10), following an adverse 3-0 panel decision by the Fifth Circuit that reversed dismissal of Plaintiff's complaint, NAMB filed a petition for rehearing *en banc* in the Fifth Circuit. NAMB, an agency of the Southern Baptist Convention (SBC), sought amicus support for its rehearing petition from the ERLC, which is another agency of the SBC. The ERLC then paired with the Thomas More Society to file an amicus brief in support of NAMB's position (the "ERLC Amicus Brief").

There were two main problems with this: (1) displaying a lack of candor to the court, neither the ERLC nor NAMB disclosed to the Fifth Circuit that they were part of the same organization—the SBC; and (2) the ERLC Amicus Brief contained several misrepresentations about Baptist polity that were relevant to the Fifth Circuit's legal analysis. *See* Doc. 273, at 9 (citing Doc. 133, at 8-10; Ferrer Tr. 202:12-15 (agreeing "the ERLC brief contained misstatements about the nature of Southern Baptists"); de Armas Tr. 175:13-15 (the misstatements in ERLC Amicus Brief "would be obvious to anyone with knowledge of Baptist polity"); NAMB 30(b)(6) Tr. 66:16 (falsity of statements in ERLC Amicus Brief were "obvious.")). The Brief's false statements led to a firestorm of criticism and controversy within and outside the SBC. *Id.* (citing Ezell Tr. 294:2-8 (acknowledging "a lot of controversy and complaints" and "SBC drama" about the Amicus Brief); de Armas Tr. 172:3-7 ("our Southern Baptist family was up in arms about what the ERLC had . . . been a part of in stating, because our SBC family knows that not to be true. And they were appalled at what ERLC did."))

2

Aware of these serious errors, neither NAMB nor the ERLC brought them to the attention of the Fifth Circuit as it considered NAMB's petition for rehearing. Instead, only months later after rehearing was denied did the ERLC publicly apologize and send a belated letter to the Fifth Circuit confessing the errors. *See* Doc. 273, at 9; Doc. 183, at 8-10 (Hankins Expert Report). Moreover, a privilege log produced by the Thomas More Society in discovery shows that NAMB's outside counsel received a draft of the ERLC Amicus Brief shortly before it was filed. Afterwards, NAMB sat by silently for months while the Fifth Circuit decided rehearing. *See* Doc. 273, at 10 n.3; Doc. 272-8, at 122-126 (NAMB 30(b)(6) Dep. Exh. 10).

**B.     Argument**

The evidence establishing NAMB's complicity in the ERLC's misrepresentations to the Fifth Circuit is intrinsic evidence that is directly relevant to Plaintiff's claims. "Evidence is relevant if it tends to make a fact of consequence more probable or less probable," and all relevant evidence is admissible except as otherwise provided by the rules. Fed. R. Evid. 401; 402. While the admission of "other acts" evidence is governed by Federal Rule of Evidence 404(b), "evidence that is intrinsic to the case is not limited by [Rule 404(b)]." *Waste Mgmt. of Louisiana, L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 967 (5th Cir. 2019). "Intrinsic evidence does not implicate Rule 404(b), and 'consideration of its admissibility pursuant to that rule is unnecessary.'" *Id*. (quoting *United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010)).

Here, the facts regarding the ERLC Amicus Brief are intrinsic evidence that bear directly on Plaintiff's claims. NAMB's egregious conduct with respect to the ERLC Amicus Brief took place after he had filed his original complaint, so in Plaintiff's amended Supplemental Pleading he included detailed allegations about these events. *See* Doc. 191, Pl.'s Supp. Pleading ¶ 37. In other words, this is conduct that Plaintiff alleges will help prove his case.

3

As one example, in Count VI Plaintiff alleges post-termination Infliction of Emotional Distress. As part of that claim, Plaintiff alleges that "[s]ince Plaintiff's termination by BCMD, and continuing to the present, NAMB has engaged in additional tortious conduct," and that "NAMB's tortious conduct since Plaintiff's termination has been willful and outrageous." Doc. 191, at ¶¶ 58-59. Likewise, Plaintiff alleges that "NAMB's misconduct was undertaken with actual malice toward Plaintiff and was inflicted upon Plaintiff in disregard for his rights and welfare, warranting an award of punitive damages." *Id*., at ¶ 39. Among a multitude of other evidence, Plaintiff intends to rely at trial on NAMB's "willful and outrageous" conduct regarding the ERLC Amicus Brief to help prove these claims.

NAMB misleadingly suggests the ERLC Amicus Brief allegations are not in Plaintiff's pleading. *See* Doc. 278, at 2-3 (MIL No. 1). That is false. The issue is explicitly addressed in Plaintiff's Supplemental Pleading. *See* Doc. 191, at ¶ 37 ("NAMB has also engaged in egregious misconduct by its intentional and strategic silence before the Fifth Circuit in this case when a co-SBC-agency—the Ethics and Religious Liberty Commission (ERLC)—filed an amicus brief supporting NAMB's request for en banc review, containing blatantly false misrepresentations about Southern Baptist polity, on issues before the court of appeals."). Similarly, NAMB argues that Plaintiff seeks to introduce this evidence "to suggest that NAMB personnel who are not witnesses in this trial had some role in making a misstatement to a court, and thereby tarnish NAMB's character before the jury." Doc. 278, at 2. Again, that is not correct. Plaintiff seeks to introduce this evidence to prove that NAMB engaged in egregious conduct against him. NAMB also omits from its motion that Plaintiff's expert witness, Dr. Barry Hankins, addressed the ERLC Amicus Brief in his expert report and NAMB's attorneys questioned him about it during his

4

deposition. *See* Doc. 133-1, at 8-10. NAMB did not file a *Daubert* motion under Federal Rule of Evidence 702 seeking to exclude that expert testimony, and the deadline for doing so has passed.

Arguing in part that this evidence should be excluded under Federal Rule of Evidence 403, NAMB claims, unsupported by the factual record, that "there is no evidence" that NAMB personnel were aware of the misrepresentations in the ERLC Amicus Brief before it was filed. *See* Doc. 278, at 2. Yet, NAMB admits that the Thomas More Society's privilege log reflects communications with NAMB's attorney about the draft ERLC Amicus Brief, and NAMB acknowledged at its 30(b)(6) deposition that it had no basis for disputing the accuracy of that privilege log. *Id*. at 1; Doc. 273, at 10 n.3; Doc. 272-8, at 24 (Tr. 89:4-16). NAMB's motion suggests it is possible no one at NAMB reviewed the brief before it was filed. It also cites the self-serving testimony of its President, Kevin Ezell, that he was unaware of any correspondence between NAMB and ERLC about the contents of the ERLC Amicus Brief. These are issues for the jury. Plaintiff has proffered facts establishing that NAMB knew of the false statements in the brief before it was filed. Moreover, NAMB cannot and does not dispute that ERLC's brief contained false statements, that it was publicly filed, and that NAMB took no steps to correct the inaccurate record for nearly four months—until after the Fifth Circuit had made its decision. *See* Doc. 273, at 9-10; Doc. 272-18, at 3-7; Doc. 191, at 9. Accordingly, the probative value of the compelling ERLC Amicus Brief evidence is not outweighed, let alone "substantially outweighed," by the danger of unfair prejudice under FRE 403(b).[1]

---

[1] For the foregoing reasons, the introduction of the ERLC Amicus Brief evidence would also not be a "waste of time at trial," as argued by NAMB. Doc. 278, at 2.

**II.     Bill Barker's Testimony is Admissible under FRE 404(b) and FRE 608(a)**

In its second motion *in limine*, NAMB seeks to preclude any testimony at trial from former NAMB employee Bill Barker as well as the introduction into evidence of his deposition testimony and sworn declaration. As stated in his sworn declaration, Mr. Barker served as a missionary in the Appalachian Regional Ministry (ARM) from May 1, 2001 through December 31, 2017. *See* Doc. 281-8 ("Barker Declaration"), at ¶ 2. ARM was a cooperative ministry of NAMB, the National Woman's Missionary Union (WMU), and thirteen state conventions. *Id.* During that time, Mr. Barker had many personal interactions with NAMB's President Kevin Ezell and participated in many meetings with him. *Id.*, at ¶ 3. Mr. Barker's testimony is admissible at trial on several different bases, and if Mr. Barker is unavailable to testify under FRE 804(a) his deposition testimony is admissible as well.

**A.     Federal Rule of Evidence 404(b)**

First, Mr. Barker's testimony is admissible at trial under Federal Rule of Evidence 404(b) to establish that NAMB had a pattern and practice of criticizing and punishing those it considered too independent to follow its dictates. In his declaration, Mr. Barker provides numerous examples establishing that NAMB acted in this manner towards him.[2]

The Fifth Circuit applies a two-pronged analysis for the admissibility of evidence under Rule 404(b). *United States v. Cockrell*, 587 F.3d 674, 678 (5th Cir. 2009) (citing *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978)). First, "the evidence of 'other crimes, wrongs, or acts' must be relevant to an issue other than the defendant's character." *Id*. Second, "the evidence must possess probative value that is not substantially outweighed by its undue prejudice." *Id*.

---

[2] NAMB did not file a motion *in limine* to preclude other 404(b) evidence at trial, and Plaintiff reserves the right to call additional witnesses on this issue.

Case: 1:17-cv-00080-GHD-DAS Doc #: 286 Filed: 08/09/23 7 of 13 PageID #: 4089

(citing *United States v. Percel*, 553 F.3d 903, 912 (5th Cir. 2008)). "In weighing the probative value and unfair prejudice, th[e] court must make a 'commonsense assessment of all the circumstances surrounding the extrinsic offense.'" *Id*. (quoting *Beechum*, 582 F.2d at 914).

Here, Plaintiff contends that he was "too independent and principled for NAMB—which gradually turned on him, ultimately attacking him with disparaging falsehoods, which led to Plaintiff's ouster by BCMD." Doc. 191, at ¶ 9. NAMB, on the other hand, argues in its motion for summary judgment that BCMD terminated Plaintiff for reasons that had nothing whatsoever to do with NAMB. *See* Doc. 264, at 15. Thus, Mr. Barker's testimony corroborating that NAMB acted in the same matter towards him as it did towards Plaintiff is highly probative—not because it unfairly attacks NAMB's character, but because it establishes that NAMB acted similarly with respect to Mr. Barker and Plaintiff.[3]

As one specific example, in his declaration Mr. Barker explained NAMB's response to a large monetary donation that was made through Mr. Barker's organization directly rather than through NAMB as NAMB preferred:

> In the spring of 2017, a sizeable donation of money was made to Clear Creek Baptist Bible College (CCBBC), in Pineville, Kentucky, through ARM. When Mr. Ezell found out about the donation, he became angry, fired off a number of heated text messages (that he continued sending until after midnight), and had the ARM website shutdown.
>
> My life was made miserable after that in terms of working with NAMB management. I was restricted from working with certain ministries and schools that Ezell did not like (such as CCBBC) and ministries that were loosely connected with the Southern Baptist Convention.

---

[3] This evidence also satisfies the remaining 404(b) factors delineated by the Fifth Circuit, including that the other act evidence is similar to the evidence in this case, the amount of time separating the other act evidence and the evidence here is limited, and the court can give a limiting instruction on the proper use of the extrinsic evidence. *See Smith*, 804 F.3d at 736.

7

Doc. 281-8, at ¶¶ 6-7. This is the exact type of testimony that Rule 404(b) is designed to permit. Mr. Barker's account corroborates Plaintiff's allegations by establishing that NAMB had a modus operandi of punishing those who did not behave in accordance with its wishes. Evidence that NAMB retaliated against Mr. Barker for his actions makes it more likely that NAMB also retaliated against Plaintiff for his actions, and ultimately sought to have BCMD terminate him.

This evidence is also highly probative because NAMB will likely argue at trial that Plaintiff's actions were uniquely problematic among the leaders of the dozens of other state Baptist organizations. NAMB's President Mr. Ezell testified to this repeatedly at his deposition:

- "I would not agree they're serious allegations. We're just saying he is consistently not doing as we have asked the other 42 state conventions. We simply wanted him to have a partnership within the guide rails, like the other 41 conventions were doing."

- "We have 42 relationships and this was the most challenging one…"

- "… we have 42 state conventions. This is by far the most high maintenance person that we were dealing with. This is not an adult daycare."

- "[A]s I said, there are 42 state conventions. We're only having this issue with one."

Exh. A (Ezell Dep. Tr.), at 57:20-25, 69:13-15, 226:9-11; 287:15-17.

NAMB cannot be allowed to portray Plaintiff as singularly difficult among the leaders of the 42 state Baptist organizations, and simultaneously exclude the testimony of an individual that directly contradicts that assertion. In truth, Plaintiff was not uniquely "high maintenance": NAMB retaliated against Plaintiff, just like it retaliated against Mr. Barker and others, because he acted independently from NAMB.

As a final point, in the event that the Court is not inclined to allow Plaintiff to present Mr. Barker's testimony affirmatively at trial under Rule 404(b) based on the current record, Plaintiff

8

respectfully requests that the Court allow Plaintiff to revisit this issue at trial. It is likely that the evidence NAMB introduces will further open the door to Mr. Barker's testimony, and under those circumstances Plaintiff should be permitted to cross-examine NAMB's witnesses about this evidence as well.

### B. Federal Rule of Evidence 608

Additionally, Mr. Barker's testimony is independently admissible under Federal Rule of Evidence 608. Under that rule, the "[c]redibility of a witness may be … attacked by testimony about the witness having a reputation for having a character for … untruthfulness, or by opinion evidence of that character." Fed. R. Evid. 608(a); *see also Geiger v. Monroe Cnty., Mississippi*, No. 1:16-CV-95-DMB-DAS, 2022 WL 4467673, at *1 (N.D. Miss. Sept. 26, 2022) ("Rule 608(a) allows a party to attack the credibility of a witness through reputation and opinion evidence of his character for truthfulness or untruthfulness."). Thus, if NAMB calls its President Mr. Ezell as a witness, Plaintiff is entitled to call Mr. Barker as a witness to testify to his opinion of Mr. Ezell's untruthful character. Likewise, if NAMB attacks the credibility of Plaintiff, under the provisions of Rule 608 Plaintiff is entitled to call Mr. Barker to testify to Plaintiff's character for truthfulness in response. *See* Fed R. Evid. 608(a) (evidence of truthful character is admissible after witness's character for truthfulness has been attacked).

### C. Manner of Testimony

Mr. Barker's live testimony at trial is admissible for the reasons discussed above. In the event that Mr. Barker is unavailable to testify at trial under Federal Rule of Evidence 804(a), his deposition testimony on these topics is admissible as "former testimony" under Federal Rule of Evidence 804(b)(1). Attorneys for NAMB took his sworn deposition in this matter, and thus had

9

"an opportunity … to develop [his testimony] by direct, cross, or redirect examination." Fed. R. Evid. 804(b)(1).

### III. The Evidence in the Declarations Challenged by NAMB is Relevant and Admissible

In its third motion *in limine*, NAMB moves to preclude Plaintiff from admitting certain declarations directly into evidence. As Plaintiff prepares for trial, he is finalizing the list of witnesses that he intends to call. Each of the witnesses listed in NAMB's motion are potential witnesses for Plaintiff that could testify to highly probative facts. In the event that Plaintiff plans to call one or more of these witnesses and it appears that they will be unavailable, Plaintiff seeks leave to take their depositions to preserve their testimony for trial. If they are unavailable for depositions, Plaintiff requests the admission of their sworn declarations.

As an initial matter, although NAMB moves to exclude just the declarations of these witnesses and not their live testimony, it argues in passing that the testimony of each of the witnesses would be irrelevant to the issues in the case. Given that these declarations concern facts directly referenced in Plaintiff's Supplemental Pleading, this argument is hard to fathom.

Five of the declarations recount facts from the Supplemental Pleading. Counts I and II, for example, allege that NAMB's conduct resulted in Plaintiff's termination from BCMD. *See* Doc. 191, at ¶¶ 40-46; *id*. ¶ 16 ("Although BCMD made the final decision to terminate Plaintiff as its Executive Director, that decision was heavily influenced by NAMB's tortious conduct—which included disparagement and false statements about Plaintiff."). Both the Scott and Wolverton declarations provide firsthand, contemporaneous accounts of communications regarding the "reason for Will McRaney's termination," Doc. 281-7 (Scott), ¶ 5, both leading up to and "in the days following Will's departure," Doc. 281-6 (Wolverton), ¶ 6. These accounts directly support Plaintiff's claims—it is hard to conceive of evidence more relevant than this. *See* Doc. 281-7, at ¶

10

5 ("During this meeting it was agreed upon that Kevin Ezell and the withholding of funds was a significant reason for Will McRaney's termination."); Doc. 281-6, at ¶ 11 ("By the time [Bill Warren and I] finished our conversation, it was very clear that the primary reason for Dr. McRaney's termination was Dr. Ezell's influence and his threat to continue withholding funds from BCMD.").

Counts IV and V allege that NAMB continued its campaign of defamation and tortious interference with Plaintiff's prospective business relationships even after Plaintiff's termination, dissuading others in the Southern Baptist community from working with or hiring Plaintiff after his departure from BCMD. Doc. 191, at ¶¶ 51-56. The Thomas, Crosby, and Breidenbaugh declarations provide firsthand accounts of how NAMB's conduct resulted in lost business opportunities for Plaintiff. *See* Doc. 281-2 (Thomas); Doc. 281-3 (Crosby); Doc. 281-5 (Breidenbaugh). The Wheeler declaration likewise concerns part of Plaintiff's post-termination claims—the photograph posted at NAMB headquarters. *See* Doc. 281-4 (Wheeler). And finally, the Hannigan declaration also supports Plaintiff's allegations of NAMB's post-termination campaign against him. *See* Doc. 281-11 (Hannigan).

If the Court is inclined to grant the motion to exclude the sworn declarations in full or in part, Plaintiff requests permission to notice pre-trial, remote depositions of these witnesses to preserve their testimony if they are unavailable to appear at trial. At the deposition, both sides would be limited to examining the witness on the subject matter of their declaration. The Fifth Circuit has repeatedly noted and approved the practice of parties taking "preservation" or "trial" depositions, as opposed to discovery depositions, in the event that a witness is unavailable to testify at trial. *See Miciotto v. Hobby Lobby Stores, Inc.*, 2022 WL 3210686, at *5 (5th Cir. Aug. 9, 2022) (distinguishing between a witness's *discovery* and *trial* depositions) (emphasis added); *U.S. for*

*Use of Consol. Elec. Distributors, Inc. v. Altech, Inc.*, 929 F.2d 1089, 1092 (5th Cir. 1991) ("In the case at bar, when the witness became unexpectedly unavailable for bench trial after the trial had begun, the court exercised its discretionary power to hold the record open and permit Consolidated to take and introduce the deposition of the unavailable witness within 30 days. This solution was reasonable under the circumstances…"); *Charles v. F.W. Wade*, 665 F.2d 661, 664 (5th Cir. 1982) (holding that it was an abuse of discretion for a trial court to refuse to permit a deposition for trial testimony for the reason that discovery had closed).

If a witness is unavailable for a deposition to preserve their testimony, Plaintiff requests that the Court permit the introduction of their sworn declaration directly into evidence. Under these circumstances, courts allow for the admission of similar out-of-court affidavits or sworn declarations under the residual hearsay exception of FRE 807. *See Klocke v. Watson*, 2023 WL 2823060, at *7 (5th Cir. Apr. 7, 2023) (quoting Fed. R. Evid. 807(a)) ("The residual hearsay exception allows a statement that is otherwise hearsay to be admitted if: "(1) the statement is supported by sufficient guarantees of trustworthiness"; and "(2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."). This is especially true here where the declarations have been made under oath and NAMB has had ample notice of and time to depose these declarants and decided against it. *See* Doc. 232; 235 (NAMB successfully requesting to continue discovery deadline to depose certain declarants).

Thus, it is well-within the Court's discretion to admit the declarations at trial and doing so in the event of an unavailable witness would promote both the ascertainment of the truth and the fair adjudication of this matter. *See State Farm Fire & Cas. Co. v. Amazon.com, Inc.*, 525 F. Supp. 3d 753, 757 (N.D. Miss. 2021) ("District Courts have a considerable amount of discretion in

12

applying the residual exception to the hearsay rule."); *Polaris PowerLED Techs., LLC v. Samsung Elecs. Am., Inc.*, 386 F. Supp. 3d 760, 764 (E.D. Tex. 2019) (citing *Dartez v. Fibreboard Corp.*, 765 F.2d 456, 462 (5th Cir. 1985)) (Rule 807 was created to provide courts with "the flexibility necessary to address unanticipated situations and to facilitate the basic purpose of the Rules: ascertainment of the truth and fair adjudication of controversies.").

### IV. Conclusion

For the foregoing reasons, NAMB's three motions *in limine* should be denied.

August 4, 2023

Respectfully Submitted,

*William Harvey Barton*

William Harvey Barton, II
BARTON LAW FIRM, PLLC
3007 Magnolia Street
Pascagoula, MS 39567
Phone: (228) 769-2070
harvey@wbartonlaw.com

*Scott E. Gant*

Scott E. Gant
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Phone: (202) 237-2727
sgant@bsfllp.com