UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

WILL MCRANEY                                                                  PLAINTIFF

v.                                                               Civil No. 1:17-cv-00080-GHD-DAS

THE NORTH AMERICAN MISSION BOARD
OF THE SOUTHERN BAPTIST CONVENTION                  DEFENDANT

**MEMORANDUM OPINION**

Presently before the Court is the Defendant North American Mission Board's motion for summary judgment [263]. Upon due consideration, the Court finds that the Defendant's motion [263] should be granted and this matter dismissed for lack of subject matter jurisdiction.

**Factual and Procedural Background**

The Defendant North American Mission Board ("NAMB") is an entity of the Southern Baptist Convention ("SBC"). [Doc. 191 at p.1]. NAMB has relationships with several state or regional conventions of churches, including a formal relationship with the Baptist Convention of Maryland/Delaware ("BCMD"), which is the Plaintiff's former employer. Specifically, in 2012, NAMB and BCMD executed a Strategic Partnership Agreement ("SPA"), which is a formal joint ministry agreement that defines the relationship and responsibilities of the two entities in areas where "the two partners jointly develop, administer, and evaluate a strategic plan" for ministry and evangelism [See Doc. 263-1].

The Plaintiff, an ordained minister who currently serves as a Senior Pastor at a Florida church, served as BCMD's Executive Missional Strategist, or Executive Director, between September 2013 and June 2015. [263-4]. In that role, he and NAMB disagreed

1

over the best way to achieve the religious objectives set forth in the parties' SPA. [263-10]. Among other issues, the Plaintiff and NAMB disagreed over missionary selection and funding, associational giving, and missionary work requirements. [*Id.*] These disputes, characterized by BCMD's President as a dispute between members within the Body of Christ over the performance of an evangelistic mission, eventually led NAMB to tender its intent to terminate the SPA between it and BCMD. [263-4, at p. 101; 263-11]. Ultimately, the BCMD terminated the Plaintiff's employment.

Thereafter, the Plaintiff filed this suit against NAMB in the Circuit Court of Winston County, Mississippi. In the suit, the Plaintiff alleges that NAMB defamed him and tortiously interfered with his employment with the BCMD resulting in his termination from employment. The Defendant removed the matter to this Court, premising federal jurisdiction on diversity of citizenship under 28 U.S.C § 1332.

The Defendant then filed a motion to dismiss for failure to state a claim, arguing that the ecclesiastical abstention doctrine required dismissal. Because NAMB moved for dismissal under 12(b)(6), the Court reviewed NAMB's motion under that standard and found that based on the allegations of the complaint alone, the Court could not rule that its adjudication of this matter would necessarily entangle the Court in matters of religious doctrine.[1]

The Defendant subsequently reasserted the application of the doctrine in a motion for summary judgment [48]. The Court then ordered the parties to show cause why the matter should not be dismissed for lack of subject matter jurisdiction. *See* 28 U.S.C. §

---

[1] The Court did dismiss one count of tortious interference because the Plaintiff failed to plead that he had suffered damages.

2

1447(c) (In case removed to federal court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.") The parties responded, and the Court dismissed the case and ruled that it did not possess subject matter jurisdiction over the Plaintiff's claims under the ecclesiastical abstention doctrine. [63, 64]. The Defendant appealed and the Fifth Circuit remanded the case, holding that the Court's ruling was "premature" given that no discovery had taken place, but further held that discovery could confirm that this case is indeed an off-limits religious dispute. *McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*, 966 F.3d 346, 351 (5th Cir. 2020). The parties have now conducted discovery and the Defendant has filed the instant motion for summary judgment.

## Standard of Review

### Summary Judgment

This Court grants summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record

it believes demonstrate the absence of a genuine dispute of material fact. *Id.* at 323. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). When the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

Ecclesiastical Abstention Doctrine

The First Amendment provides religious organizations with the "power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952); see *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S.Ct. 2049, 2060 (2020) (holding that the First Amendment forbids court intrusion in "matters of church government" and secures church autonomy "with respect to internal management decisions that are essential to the institution's central mission ... [including] the selection of the individuals who play certain key roles"). The ecclesiastical abstention doctrine, which is based on the First Amendment's religious freedom clause, prohibits

4

courts from reviewing "internal policies, internal procedures, or internal decisions of the church," as well as "from involving themselves in . . . disputes concerning theological controversy, church discipline, ecclesiastical government . . ." *Klouda v. Sw. Baptist Theological Seminary*, 543 F. Supp. 2d 594, 611 (N.D. Tex. 2008); *Ginyard v. Church of God in Christ Kentucky First Jurisdiction, Inc.*, 6 F. Supp. 3d 725, 729 (W.D. Ky. 2014). In addition, "[c]ourts are bound to stay out of employment disputes involving those holding certain important positions with churches and other religious institutions." *Our Lady of Guadalupe Sch.*, 140 S.Ct. at 2060. As the Fifth Circuit noted in this case, "[m]atters of church government, as well as those of faith and doctrine" are among the "purely ecclesiastical questions" for which judicial review is precluded. *McRaney*, 966 F.3d at 348. The Fifth Circuit further held in this case that "[i]f further proceedings and factual development reveal that McRaney's claims cannot be resolved without deciding purely ecclesiastical questions, the court is free to reconsider whether it is appropriate to dismiss ….McRaney's claims." *McRaney*, 966 F.3d at 350.

### Analysis and Discussion

<u>Application of the Ecclesiastical Abstention Doctrine</u>

As explained above, the ecclesiastical abstention doctrine, which is rooted in the First Amendment's free exercise clause, is built out of numerous Supreme Court cases affirming that churches have the "power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Kedroff*, 344 U.S. at 116. Under this doctrine courts have:

> consistently agreed that civil courts should not review the internal policies, internal procedures, or internal decisions of the church, and this includes review of whether a church followed its own internal policies or procedures. *See, e.g., Kral v. Sisters of the*

5

> *Third Order Regular of St. Francis,* 746 F.2d 450 (8th Cir. 1984) ("A claim of violation of the law of a hierarchical church, once rejected by the church's judicial authorities, is not subject to revision in the secular courts."); *Nunn v. Black,* 506 F. Supp. 444, 448 (W.D. Va. 1981) (stating "the fact that local church may have departed arbitrarily from its established expulsion procedure in removing [dissident church members] was of no constitutional consequence"), *aff'd* 661 F.2d 925 (4th Cir. 1981); *Simpson v. Wells Lamont Corp.,* 494 F.2d 490 (5th Cir. 1974); *Burgess v. Rock Creek Baptist Church,* 734 F. Supp. 30 (D.D.C. 1990).

*Ginyard,* 6 F. Supp. 3d at 729.

Considering all the facts in the record, the Court finds that it cannot adjudicate the Plaintiff's claims in this case without impermissibly delving into church matters in violation of the ecclesiastical abstention doctrine.

First, the Plaintiff's claims, which are brought to protest his dismissal from church leadership, would require the Court to inquire into BCMD's reasons for terminating the Plaintiff's employment and whether NAMB influenced BCMD's decision to terminate the Plaintiff from employment. Specifically, the Plaintiff claims that NAMB defamed him to BCMD and tortiously interfered with his employment agreement with BCMD and that, as a result, he was fired. To prove a defendant tortiously interfered with a business relationship, the plaintiff must show "(1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiff in his/her lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which acts constitute malice); (4) that actual damage or loss resulted," and "(5) the defendant's acts were the proximate cause of the loss or damage suffered by the plaintiff." *Scruggs, Millette, Bozeman & Dent, P.A. v. Merkel & Cocke, P.A.*, 910 So.2d 1093, 1098–99 (Miss. 2005). To adjudicate these claims, the Court

would be required to interpret the SPA, which is an agreement steeped in religious doctrine, and weigh in on the Plaintiff's job performance as BCMD's Executive Missional Strategist, a position which by its very terms invokes the Church's religious mission and a position in which the Plaintiff clearly served in a ministerial role and in which he had a primary role in conveying the Baptist Church's message and carrying out its religious mission. [Doc. 263-5].[2] Such an inquiry is clearly contrary to the Constitution, as the Supreme Court has made clear that "the authority to select and control who will minister to the faithful . . . is the church's alone" because it is "a matter 'strictly ecclesiastical.'" *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 195 (2012).

In other words, the Court finds that because the nature of the Plaintiff's claims unavoidably require inquiring into BCMD's internal policies, procedures, and decision-making, in order to determine if NAMB influenced BCMD's decision, the ecclesiastical abstention doctrine is squarely and obviously invoked, and the Court cannot proceed to inquire into such matters and adjudicate the Plaintiff's claims. As the Fifth Circuit has already held in this matter, in order to determine whether the Defendant NAMB unlawfully interfered with the Plaintiff's contract with BCMD, the Court must inquire into the reasons that BCMD decided to terminate the Plaintiff's employment. *McRaney*, 966 F.3d at 349. Making such a ruling would be a clear violation of the First Amendment and the

---

[2] The Court finds that the SPA, which as mentioned previously is a Strategic Partnership Agreement between the Defendant NAMB and BCMD, is an inherently religious doctrine-based document. [Doc. 263-3]. The SPA begins by quoting the Bible and is entirely focused on religious matters, including ministry priorities, religious purpose, and missionary personnel and funding. Thus, in order to adjudicate the Plaintiff's claims, the Court would necessarily be required to interpret and decide matters of church government as well as those of faith and doctrine, which the Supreme Court has held encroaches on a Church's "power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Kedroff*, 344 U.S. at 116.

7

ecclesiastical abstention doctrine. It is indeed a quintessential example of an internal management decision that is left under the Constitution entirely to the discretion of the Church.

The Plaintiff further claims that NAMB defamed him by falsely stating that he breached the SPA. While, strictly speaking, a claim involving a breach of contract might not involve inquiring into religious matters, in this instance the SPA is an inherently religious document. Thus, because the Court would be required to assess NAMB's intent in accusing the Plaintiff of breaching the SPA, and then potentially causing NAMB to terminate the SPA with BCMD and as a result perhaps influencing BCMD to terminate the Plaintiff's employment, the Court would be required to delve into inherently religious matters in deciding why NAMB made the alleged statements. Again, this crosses the line into impermissible inquiry into religious matters and decision-making. *Hosanna-Tabor*, 565 U.S. at 185-86 (holding that the First Amendment guarantees "a spirit of freedom for religious organizations, an independence from secular control or manipulation – in short, power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.").

In essence, review of the Plaintiff's claims will unavoidably require the Court to determine *why* BCMD terminated the Plaintiff's employment — and the level of influence that the Defendant NAMB had upon BCMD's decision. It will further require the Court to determine whether NAMB's actions were taken "without right or justifiable cause" — in other words, whether NAMB had a valid religious reason for its actions. Under the ecclesiastical abstention doctrine, the Court simply is not permitted to do so.

8

The Plaintiff also claims that as a result of NAMB's interference, he was disinvited to speak at a religious event in Louisville, Mississippi. Again, review of this claim would require the Court to determine if the event canceled the Plaintiff's speech for a valid religious reason. It would even require the Court to determine if NAMB's efforts to stop the speech were tortious or if they were a valid exercise of religious belief. As with the Plaintiff's other claims, that is simply a matter the Court cannot decide.

Finally, McRaney claims that the NAMB intentionally inflicted emotional distress upon him by displaying a picture of him at its headquarters that stated "he was not be trusted and public enemy #1 of NAMB." [191, at p. 6.] A plaintiff seeking to establish an intentional infliction of emotional distress must show that "(1) the defendant acted willfully or wantonly toward the plaintiff by committing certain described actions; (2) the defendant's acts are ones that evoke outrage or revulsion in civilized society; (3) the acts were directed at, or intended to cause harm to, the plaintiff; (4) the plaintiff suffered severe emotional distress as a direct result of the acts of the defendant; and (5) such resulting emotional distress was foreseeable from the intentional acts of the defendant." *Rainer v. Wal–Mart Assocs. Inc.*, 119 So.3d 398, 403–04 (Miss. Ct. App. 2013). Once again, to resolve these issues, the Court will need to inquire into the reason the NAMB held these opinions of the Plaintiff, and because the NAMB is a religious institution, the question will touch on matters of religious belief.

A nearly fifty-year old similar case from this District makes the point quite clearly. In *Simpson*, cited *infra*, a dismissed pastor sought to bring a civil rights action challenging his dismissal from employment. The pastor argued that the court could adjudicate his dispute "without determining questions of religious doctrine," much as the Plaintiff argues

9

herein. Both Judge Keady, at the District Court, and the Fifth Circuit rejected the pastor's argument, dismissed the case for lack of subject matter jurisdiction, and held that the Constitution and the ecclesiastical abstention doctrine provide "[a] spirit of freedom for religious organizations, an independence from secular control or manipulation in short, power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Simpson*, 494 F.2d at 493. The same result applies here in the case *sub judice*.

For all of these reasons, the Court, therefore, finds that under the First Amendment it lacks subject matter jurisdiction to adjudicate this dispute. In order to adjudicate the Plaintiff's claims, the Court would necessarily be required to interpret and decide matters of church government as well as those of faith and doctrine, which the Supreme Court has held encroaches on a Church's "power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Kedroff*, 344 U.S. at 116. Accordingly, the Court holds, as was additionally the case in the analogous *Bell v. Presbyterian Church (U.S.A.)*, in which a minister was terminated as a program executive director and sued organizations affiliated with his church employer, "decision[s] about the nature, extent, administration, and termination of a religious ministry falls with the ecclesiastical sphere that the First Amendment protects from civil court intervention." *Bell*, 126 F.3d 328, 332-33 (4th Cir. 1997) (affirming district court ruling that employment-related dispute between minister and affiliated non-employer organizations was covered by ecclesiastical abstention doctrine). Adjudication of the Plaintiff's claims in this lawsuit will clearly require the Court to inquire into religious matters and decision-making to a degree that is simply impermissible under the

Constitution and the ecclesiastical abstention doctrine. Accordingly, the Court finds that it does not have jurisdiction to adjudicate the Plaintiff's claims, and those claims and this case in its entirety shall be dismissed on those grounds.

## Dismissal vs. Remand to State Court

28 U.S.C. § 1447(c) provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall be remanded*" to the state court from which it was removed. (emphasis added). The Supreme Court has long held that over ecclesiastical controversies such as this one, "*civil courts* exercise *no* jurisdiction." *Watson v. Jones*, 80 U.S. 679, 733 (1871) (emphasis added). In addition, the Fifth Circuit has recognized that "dismissal, rather than remand, may be proper if a suit is a local action over which the state court in which it was brought also would lack jurisdiction." *Boaz Legacy, L.P. v. Roberts*, 628 F. App'x 318, 320 (5th Cir. 2016) (citing *Trust Co. Bank v. United States Gypsum Co.*, 950 F.2d 1144, 1148 (5th Cir. 1992)). NAMB urges this Court to dismiss the Plaintiff's claims because, it argues, the state courts of Mississippi would also lack subject-matter jurisdiction under the ecclesiastical abstention doctrine. See *Mallette v. Church of God Int'l*, 789 So. 2d 120, 123 (Miss. Ct. App. 2001).

The Court agrees with NAMB that Mississippi state courts also clearly lack subject matter jurisdiction to adjudicate this dispute. *Mallette*, 789 So. 2d at 123 ("A civil court is forbidden, under the First and Fourteenth Amendments to the United States Constitution, from becoming involved in ecclesiastical disputes."). If this Court lacks jurisdiction to hear the Plaintiff's claims because the claims involve ecclesiastical disputes, then the state court likewise lacks jurisdiction. Thus, on remand, the state trial court would likewise be

11

compelled to dismiss under the doctrine. Accordingly, the Court finds that this matter should be dismissed rather than remanded.

An order in accordance with this opinion shall issue on this date.

This, the 15 day of August, 2023.

                                                SENIOR U.S. DISTRICT JUDGE